TIFANEI RESSL-MOYER, SBN 319721
LAUREN CARBAJAL, SBN 336485
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone: (916) 634-8687
Email: tresslmoyer@lccrsf.org
       lcarbajal@lccrsf.org

PILAR GONZALEZ MORALES, SBN 308550
ELIZABETH BALLART, SBN 299226
CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER
1245 E Colfax Ave., Suite 400
Denver, CO 80218
Telephone: (303) 757-7901
Email: pgonzalez@creeclaw.org
       eballart@creeclaw.org

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| MEGAN WHITE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SACRAMENTO POLICE DEPARTMENT, et al., <br><br> Defendants. | Case No.: 2:21-cv-02211-JAM-DB <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Date:         April 19, 2022 <br> Time:        1:30 p.m. <br> Courtroom: 6, 14th Floor <br> Judge:       Hon. John A. Mendez |

I.      INTRODUCTION

The City of Sacramento and its Police Department have consistently harmed and surveilled racial justice protesters with unconstitutional practices (and policies), which span many months, and many protests. The depth and detail of Plaintiffs' allegations clearly provide grounds to

survive Defendants' Motion to Dismiss, Motion to Strike and Motion for a More Definite Statement (collectively MtD).

## II. STATEMENT OF FACTS AND BACKGROUND

This civil rights complaint arises from Defendants City of Sacramento (the City) and the Sacramento Police Department (the Police) response to a series of racial justice demonstrations. First Am. Compl. (FAC) ¶ 1, ECF No. 4. The Police fired dangerous impact munitions and chemical weapons at Plaintiffs—and other unarmed peaceful protesters and bystanders—and used violent tactics to curtail their constitutional rights. FAC ¶¶ 3-4, 29, 45. When white supremacist groups marched on the state capitol in late 2020 and early 2021, the police did not have a similarly punitive response; in fact, the Police looked the other way while white supremacists attacked other citizens. FAC ¶¶ 5-9, 30-37, 42, 69-96. The Police's violence against racial justice protestors is persistent and consistent with Defendants' unlawful policies. FAC ¶¶ 139-162. Defendants have repeatedly harassed and surveilled Plaintiffs and other racial justice demonstrators. FAC ¶¶ 97-115. The six individual plaintiffs in this suit—Megan White, Jeronimo Aguilar, Loren Wayne Kidd, Lyric Nash, Nicollette Jones, and Odette Zapata—experienced and witnessed this mistreatment. Defendants' unlawful actions have resulted in a chilling effect on the exercise of Plaintiffs' rights, including significant psychological harms. FAC ¶¶ 116-122.

On November 30, 2021, Ms. White filed an initial complaint before the statute of limitations on her claims expired. Compl., ECF No. 1. On December 30, 2021, Plaintiffs filed the FAC to include additional plaintiffs and further allegations, showing the breadth of Defendants' unconstitutional acts against racial justice protestors. Plaintiffs assert claims under the First Amendment's protections against viewpoint discrimination and retaliation, the Fourth Amendment's protection against the use of excessive force, the Fourteenth Amendment's guarantee of equal protection, the Constitution's protections against conspiracies to violate civil rights and requiring

intervention by Defendants, the California Constitution and state law. Mr. Kidd also asserts a claim under the Americans with Disabilities Act (ADA). Plaintiffs seek declaratory and injunctive relief and compensation to remedy Defendants' violations of their rights.

### III. ARGUMENT

#### A. Plaintiffs' First Amended Complaint Complies with All Applicable Pleading Requirements.

In considering a 12(b)(6) motion to dismiss, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th. Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Unless it would be futile, leave to amend should be freely granted. Fed. R. Civ. P. 15(a)(2).

#### 1. Plaintiffs Have Provided Defendants with Fair Notice of their Claims and Supporting Facts.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff "must identify 'the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 842 (9th Cir. 2000) (citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)). Defendants argue that Plaintiffs' complaint cannot survive a motion to dismiss because it is a "shotgun pleading," citing an unpublished district court decision

and a district court case from Georgia. Mem. Supp. Defs.' Mot. to Dismiss Plfs.' First Am. Compl. (MtD) at 11, ECF No. 14-1. Even if their argument was well supported, it is unavailing.

"[T]he shotgun pleading doctrine is only another way of assessing whether the pleading standard has been met." *Kershner v. Eagan*, No. 20 Civ. 01047, 2021 WL 4318294, at *3 (E.D. Cal. Sept. 23, 2021). "Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *McLaughlin v. Castro*, No. 17 Civ. 001597, 2018 WL 1726630, at *4 (E.D. Cal. Apr. 10, 2018). To avoid a shotgun pleading, a plaintiff need only "directly and simply set out precisely what each identified Defendant did to violate his constitutional rights, when and how he did it, and how Plaintiff was injured as a result." *Id.*

The FAC does just that. It sets forth facts for each individual's claim and distinguishes between Defendants with specificity, including with dates, locations, times, and names where known. *See e.g.*, FAC ¶¶ 36-38, 41, 46, 49, 50, 52, 57-59, 62, 86, 92, 95, 96, 98-101, 111, 129, 134, 141, 167, 170-172. The FAC also details the specific harm endured by each Plaintiff. *See e.g.*, FAC ¶¶ 47, 50, 55, 60, 61, 66, 68, 76-77, 84-85, 86, 89, 92, 96, 106, 114-115, 117-122. The FAC uses headings and subheadings and demarcates the incidents giving rise to the claims and their elements.[1] These details are in stark contrast to the pro se complaint in *McLaughlin*, which lumped multiple defendants together and did not identify which facts supported particular claims. *McLaughlin*, No. 17 Civ. 001597, 2018 WL 1726630 at *3.

Defendants' pique that Plaintiffs amended and expanded their complaint does not amount to grounds for dismissal. MtD at 11. Federal Rule of Civil Procedure 15(a) provides that, as a matter of course, a party may amend a claim once before a responsive pleading is served. Once an amended

---

[1] *Bautista*, 216 F.3d at 840; *Sec. & Exch. Comm'n v. Bardman*, 216 F.Supp.3d 1041, 1052 (N.D. Cal. 2016) (finding no violation where the complaint involved "multiple sub-headings that assist in tying the allegations to the various counts")

complaint has been filed, the original complaint is treated as "non-existent." *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967). A comparison of the first complaint to the FAC is immaterial.

Defendants also argue that because the harmful conduct spans over the course of multiple months and Plaintiffs allege that Defendants violated multiple laws, the Complaint "overwhelm[s]" Defendants. Mtd at 11. Certainly, Defendants do not mean to say that if a city has a pattern of conduct over a period of years, and that conduct violates multiple laws, the city may only be held to account for some of it, or none at all, because there is too much. Plaintiffs' complaint contains facts from different dates and times because the Sacramento Police attacked, surveilled, and discriminated against racial justice protestors on many occasions. FAC ¶¶ 123-124, 130, 132, 163, 165-167. These "separate interactions" over a period of multiple months are not "mere[] grievances," but instead demonstrate a department-wide pattern of illegality. Mtd at 11. The City's motion to dismiss should be denied.

**2. Plaintiffs' Short and Plain Statement of Their Claims Demonstrates that they are Entitled to Relief under Each Claim.**

Defendants also move for a more definite statement under Rule 12(e). "A Rule 12(e) motion is proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted." *Sagan v. Apple Comput., Inc.*, 874 F.Supp. 1072, 1077 (C.D. Cal. 1994). Generally disfavored, these motions "are rarely granted because of the minimal pleading requirements of the Federal Rules." *Id.* "A motion for a more definite statement should not be granted unless the defendant cannot frame a responsive pleading." *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F.Supp. 940, 949 (E.D. Cal. 1981) (citing *Boxall v. Sequoia Union High Sch. Dist.*, 464 F.Supp. 1104, 1114 (N.D. Cal. 1979). "[W]here the information sought by the moving party is available and/or properly sought through discovery the motion should be denied." *Id.* at 2

---

[2] *See also Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710 F.Supp.2d 1008, 1015 (E.D. Cal. 2010).

Plaintiffs have submitted a complaint that is replete with specific facts and details to support their legal claims. To the extent the specific information sought by Defendants seeks even more specificity in dates, times, locations, and witnesses, those facts will be available in the extensive discovery process allotted by the federal rules and this court. *Famolare*, 525 F.Supp. at 949.

**B. Defendants' Motion to Strike is Frivolous and Must Be Rejected.**

Federal Rule of Civil Procedure 12(f) provides that a court may strike from a pleading "redundant, immaterial, impertinent, or scandalous matters." However, "[m]otions to strike are disfavored and infrequently granted." *Neveu v. City of Fresno*, 392 F.Supp.2d 1159, 1170 (E.D. Cal. 2005). It must be "'clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *Id*. at 1183 (quoting *Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991)). "[W]hen ruling upon a motion to strike, the court must view the pleading under attack in the light most favorable to the pleader." *Kirk v. Colvin*, No. 13 Civ. 2571, 2014 WL 12029363, at *1 (E.D. Cal. Dec. 19, 2014) (citing *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000)). Courts "often require a showing of prejudice by the moving party." *Wynes v. Kaiser Permanente Hosp.*, No. 10 Civ. 00702, 2011 WL 1302916, at *12 (E.D. Cal. Mar. 11, 2011).

Defendants' Motion to Strike seeks to exclude significant portions of Plaintiffs' FAC in a stunning attempt to omit their own history of discrimination towards racial justice protesters. Each paragraph that Defendants ask this Court to strike relates to Plaintiffs' claims in this case. Defendants have a long history of discriminatory and deadly policing against people who protest racial injustice. The FAC details: public statements from city officials who have acknowledged this pattern—and the Defendants' subsequent inaction (¶¶ 125-129); oversight boards who corroborate The Police's racially discriminatory practices with recommendations to address the illegal behavior—and the Defendants' subsequent idleness (¶¶163-169; 171); lawsuits against the Police for violent and racist

behavior (¶¶ 132-133); and statistics illustrating that discriminatory policing is longstanding and unaddressed (¶¶ 130; 169). The FAC also alleges a pattern of Defendants suppressing the speech of racial justice protesters, while treating the speech of organized white supremacist groups more favorably. FAC ¶¶ 3-9, 28-41, 124-131. These facts are not spurious or scandalous; in fact, they evince the Police's pattern of disregard to the rights of racial justice protestors.

Disapproval of alleged facts is not sufficient reason to strike them. Defendants fail to meet the high standard required to prove that certain allegations in the FAC have "no possible bearing" on this case and will suffer prejudice as a result. *Neveu*, 392 F.Supp.2d at 1170 (quoting *Colaprico*, 758 F.Supp. at 1339).

**C. Plaintiffs Provided Defendants with Clarification of Their Compliance with the Government Claims Act.**

The City is correct that Plaintiffs Jones, Nash, and Zapata cannot bring state law claims because they did not comply with the Government Claims Act.[3] Plaintiffs contacted the Defendants on January 31, 2021 to clarify that the state law causes of action only applied to Plaintiffs White, Kidd, and Aguilar. Decl. of Tifanei Ressl-Moyer (Decl.) at 2 (email to opposing counsel).

The City does not contest Ms. White and Mr. Kidd's right to bring state law claims for damages. Though the complaint did not make this clear, Mr. Aguilar submitted an administrative claim in accordance with the Claims Act. Cal. Gov't Code § 911.2. The City summarily denied his claim on December 30, 2021. Decl. at 2. (government claims submitted by respective plaintiffs and subsequent notices of rejection). The FAC was timely filed within six months of the notice of rejection. Cal. Gov't Code § 913.[4]

---

[3] The City rejected Plaintiff Jones' claim on December 4, 2020. Because she did not file her state claims by June 4, 2020, she is barred from bringing her state law causes of action in this suit. *City of Indus. v. City of Fillmore*, 198 Cal. App.4th 191, 206 (2011), as modified (Aug. 24, 2011). Plaintiffs Nash and Zapata did not submit timely claims and are therefore barred from bringing state law claims. *Phillips v. Desert Hosp. Dist.*, 49 Cal.3d 699, 708 (1989).
[4] Ms. White filed the first complaint within six months of the City's rejection of her claim on November 30, 2021.

Mr. Aguilar informed opposing counsel of his compliance with the Claims Act, and the City acknowledged this. Decl. at 2 (electronic mail exchange). Failure to allege compliance with the Claims Act "merely *subject[s]* a claim to a motion to dismiss [;] [t]he court [ultimately] has discretion to dismiss with leave to amend to obtain compliance with the [Claims Act], unless it 'could not possibly be cured by the allegation of other facts.'" *Robinson v. Alameda Cnty.*, 875 F. Supp. 2d 1029, 1045 (N.D. Cal. 2012) (emphasis in original) (quoting *Lopez v. Smith*, 203 F.3d. 1122, 1130 (9th Cir. 2000). Plaintiffs do not oppose the dismissal of state law claims for damages made by Ms. Jones, Ms. Nash, and Ms. Zapata.

### D. The Allegations that Defendants Coordinated the Unconstitutional Protest Policing Support Plaintiffs' Civil Conspiracy Claim.

Plaintiffs would like to clarify their Fifth Claim for Relief in the FAC. Plaintiffs cited to 42 U.S.C § 1985 where 42 U.S.C § 1983 applies most appropriately. FAC ¶¶ 201-206.[5,6] With the proper citation to §1983 under the Fifth Claim for Relief, Plaintiffs have stated a claim for conspiracy. The specific allegations of coordination between the City, the Police, and individual officers in response to racial justice protests should clearly survive a motion to dismiss.

To establish liability for conspiracy under § 1983, Plaintiffs must plead the existence of a conspiracy involving state action and a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. *Mendocino Env't. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999).[7] A conspiracy requires an existence of an agreement to violate a constitutional right. *Id.*; *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010). "[E]ach participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the

---

[5] Should the Court deem necessary, Plaintiffs ask the Court to allow the Plaintiffs to amend the complaint and correct this mistake.
[6] Similarly, for the Sixth Count for Relief: Failure to Intervene, Plaintiffs cited to 42 U.S.C. § 1986, where 42. U.S.C. § 1983 applies more appropriately.
[7] § 1985—which the Plaintiffs do not intend to allege at this time—requires plaintiffs to prove a racial or other class-based discriminatory animus behind the conspirators' actions. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989). An agreement can be established by inference, which is a factual issue typically resolved by a jury. *Mendocino Env't. Ctr.*, 192 F.3d at 1301. "Where allegations of conspiracy are involved, '[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.'" [8] *Cherry v. Tyler*, No. 18 Civ. 01268, 2019 WL 1060045, 8 (E.D. Cal. Mar. 6, 2019) (quoting *Twombly*, 550 U.S. at 556).

      Plaintiffs properly alleged that the City and the Police, as well as individual police officers, "agreed among themselves and with other individuals to act in concert in order to deprive Plaintiffs of their constitutional rights, including but not limited to their right to free speech, their right to be free from excessive force, and their right to equal protection of the law" (FAC ¶ 202) and that "Defendants engaged in and facilitated numerous overt acts" in furtherance of the conspiracy (FAC ¶ 203). Much of Defendants' tactics during and following racial justice protests could not have been executed without coordination. For example, Mr. Kidd watched a Defendant officer direct a line of other officers to at once aim and open fire toward the heads of racial justice protesters who were kneeling on the ground. (FAC ¶ 65). While attempting to leave a June 2, 2020 protest, Mr. Aguilar was followed and boxed-in by Defendant officers on foot and in a car before being falsely arrested. (FAC ¶¶ 67-58). Plaintiffs also provide ample facts in which a reasonable juror could infer that the City and Police coordinated the violent response against racial justice protesters. *See* FAC ¶¶ 58-60, 88-90, 98-101, 104, 105, 125-128, 163-172.

      Plaintiffs properly allege the agreement aspect of the conspiracy with allegations that the

---

[8] "Direct evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." *Mendocino Env't. Ctr.,* 192 F.3d at 1302; *see also Crowe*, 608 F.3d at 440 ("A meeting of the minds can be inferred from circumstantial evidence ....").

City, the Police, and individual officers, coordinated unlawful responses to racial justice protests. Discovery will reveal more about this coordination, but the facts alleged are sufficient to state a claim.

### E. Plaintiffs Nash and Zapata Have Each Pled Facts Demonstrating that Defendants Violated Their Constitutional Rights.

Though they cite *Monell v. Dep't. of Social Services of City of N.Y.*, Defendants argue that with respect to only two Plaintiffs: "there are no facts which indicate there has been a violation of a recognized federal right." MtD at 12; *Monell v. Dep't. of Soc. Services of City of N.Y.*, 436 U.S. 658, 691–694 (1978). In fact, Ms. Nash and Ms. Zapata have stated claims for violations of their First, Fourth, and Fourteenth Amendment rights.

#### 1. Defendants Violated Ms. Nash and Ms. Zapata's First Amendment Rights Prohibiting Retaliation and Viewpoint Discrimination.

To state a claim for retaliation under the First Amendment, Plaintiffs must first demonstrate they were "engaged in a constitutionally protected activity," *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020). "Activities such as demonstrations, protest marches, and picketing are clearly protected by the First Amendment." *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996) as amended (Mar. 21, 1997). Ms. Nash and Ms. Zapata each attended racial justice protests and were engaged in constitutionally protected activity. FAC ¶¶ 20, 22, 51, 61, 63, 81, 98-101 102-106, 174.

Second, Plaintiffs must show that the "Defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity," and the Plaintiffs' "protected activity was a substantial or motivating factor" in the Defendants' conduct. *Index Newspapers*, 977 F.3d at 827. Where plaintiff "alleges discrete acts of police surveillance and intimidation directed solely at silencing" them, there is a cognizable claim of specific objective harm. *Gibson v. U.S.*, 781 F.2d 1334, 1338 (9th Cir. 1986). A chilling of First Amendment rights can constitute a cognizable injury. *Index Newspapers*, 977 F.3d at 826.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The use of indiscriminate force against protesters supports an inference that the police actions were substantially motivated by the plaintiff's protected First Amendment activity. *NAACP of San Jose/Silicon Valley v. City of San Jose*, No. 21 Civ. 1705, 2021 WL 4355339, at *11 (N.D. Cal. Sept. 24, 2021) ("[G]iven that the protestors were specifically protesting police misconduct, it is reasonable to allege that the protestors' viewpoint was a substantial or motivating cause – even if not necessarily the sole cause – behind the defendants' conduct."). *See also Black Lives Matter Seattle-King Cnty. v. City of Seattle*, 466 F. Supp. 3d 1206, 1214 (W.D. Wash. 2020); *Anti Police-Terror Project v. City of Oakland*, 477 F.Supp.3d 1066, 1088 (N.D. Cal. 2020).

Ms. Nash attended several protests in the City of Sacramento between May 2020 through February 2021 where she was kettled without warning or provocation and witnessed police firing chemical weapons and bean bag bullets indiscriminately into a crowd. FAC ¶¶ 61, 64. She experienced the horror of being trapped and surrounded by police violence and witnessed Defendants beating people around her. FAC ¶ 61. The Defendant officers also targeted Ms. Nash with surveillance following the protests. FAC ¶¶ 102-106.

While Ms. Nash was in a vehicle with other protest participants, the Police stopped them and mocked the racial justice chants calling for police accountability, suggesting to her that her participation in the protest were the impetus for the stop and harassment. FAC ¶ 104. As a result of this retaliation, Ms. Nash experiences symptoms of post-traumatic stress and incredible anxiety when confronted by police. FAC ¶ 119. She no longer drives to protests for fear of being targeted and fears that attending racial justice protests is not a safe activity in the City of Sacramento. FAC ¶ 106. These allegations are robust, specific, and clearly sufficient to survive a motion to dismiss.

Ms. Zapata also experienced the kind of targeted attack that gives inference to retaliation. The Police surveilled her after she participated in protests; they came to her home without notice or a warrant after protests, followed her in marked police vehicles, and have tracked Ms. Zapata with

aerial surveillance. FAC ¶¶ 22, 98-101. She witnessed the Police shoot impact munitions and chemical weapons at her and other people in the crowd without provocation or sufficient warning. FAC ¶¶ 54-55. The tear gas burned through Ms. Zapata's lungs, and she could hardly walk or discern where to seek safety. FAC ¶ 55.

These events had a dramatic impact on Ms. Zapata. Ms. Zapata has endured physiological impacts from the stress, such as throwing up, losing her appetite, and not sleeping. FAC ¶¶ 22, 117. The psychological impacts on Ms. Zapata are also profound, including a general fear of the police and fear of participating in any future public protest. FAC ¶¶ 22, 101, 117.

To state claims for viewpoint discrimination, Plaintiffs must demonstrate they were "engaged in a constitutionally protected activity." *Giebel v. Sylvester*, 244 F.3d at 1182 (9th Cir. 2001). Again, the act of protesting clearly qualifies. *Collins v. Jordan*, 110 F.3d at 1371.  Plaintiffs must demonstrate that (1) on its face, a government restriction distinguishes between types of speech or speakers based on viewpoint expressed, or (2) though neutral on its face, the regulation is motivated by a desire to suppress a particular viewpoint (in other words, the government took action against Plaintiffs because of, not merely in spite of, Plaintiffs' message). *Moss v. U.S. Secret Serv.*, 711 F.3d 941, 959 (9th Cir. 2013).

Ms. Nash and Ms. Zapata saw and experienced Defendants' use of targeted violence and surveillance following racial justice protests. FAC ¶¶ 20, 22, 53-55, 61, 64, 82, 98-101, 102-106. Police taunted Ms. Nash for opposing police violence. FAC ¶ 104.  Ms. Nash and Ms. Zapata witnessed police provide organized white supremacist groups with superior treatment, in some cases admonishing and arresting victims of white supremacist violence rather than providing them aid or protection. FAC ¶¶ 20, 22, 81-82. These allegations support an inference that the Defendants were motivated to suppress their expressed viewpoints. FAC ¶¶ 174-176. Defendants also communicated their intent: Police Chief Daniel Hahn and Deputy Police Chief Kathy Lester each described in detail

their intention to target people who support racial justice. FAC ¶ 129. Residents of the City of Sacramento and passersby noticed the disparity in how police treated white supremacist protestors and racial justice protestors and spent hours calling in to City Council to identify this disparity. FAC ¶ 128.

All of these allegations support an inference that the defendants were motivated by a desire to suppress a particular viewpoint. Plaintiffs Nash and Zapata have pled sufficient facts to state a claim for First Amendment retaliation and viewpoint discrimination.

**2.    Plaintiffs Nash and Zapata Properly Pled that Defendants Violated Their Fourth Amendment Rights to Be Free from Unreasonable Seizures and Use of Force.**

To bring an excessive force claim under § 1983, a plaintiff must show that they were seized. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. "This balancing test entails consideration of the totality of the facts and circumstances in the particular case… ." *Blanford v. Sacramento Co.*, 406 F.3d 1110 (9th Cir. 2005) (citing *Graham*, 490 U.S. at 396) (internal quotations omitted).

The Ninth Circuit has held that "the use of pepper spray, and a failure to alleviate its effects, was an unreasonable application of force against individuals who were suspected of only minor criminal activity, offered only passive resistance, and posed little to no threat of harm to others." *Nelson v. City of Davis*, 685 F.3d 867, 885 (2012).

The Defendants' intentional and indiscriminate use of chemical weapons and impact munitions terminated Ms. Nash's and Ms. Zapata's freedom of movement and constituted a seizure. FAC ¶¶ 55, 61. Ms. Nash also experienced an unlawful search and seizure when the Police stopped her in a car, approached at her at gunpoint, searched and taunted her for her participation in racial

- 13 -
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

justice protests. FAC ¶ 104. Neither Ms. Nash nor Ms. Zapata ever posed a threat while protesting. Yet, Ms. Zapata was incapacitated by tear gas which made it difficult for her to breathe, see, or even walk. FAC ¶ 55. The Police also trapped and shot at her. FAC ¶ 61. Both Ms. Zapata and Ms. Nash were unreasonably seized and subject to excessive force in violation of the Fourth Amendment.

### 3. Plaintiffs Nash and Zapata Properly Pled that Defendants Violated Their Fourteenth Amendment Rights to Equal Protection under the Law.

"A government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972). "And it may not select which issues are worth discussing or debating in public facilities. There is an 'equality of status in the field of ideas,' and government must afford all points of view an equal opportunity to be heard." *Id.* It is well-established that "[o]nce a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say." *Id.* "Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone." *Id.* Under an equal protection analysis, a government may justify selective exclusions or distinctions, but such "exclusions from a public forum must be carefully scrutinized." *Id*. at 98–99.

"'[I]invidious' distinctions cannot be enacted without a violation of the Equal Protection Clause. …[W]e must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification. *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). "[I]n our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969)). It is the government's burden of proof to demonstrate that one group posed a greater safety risk to the public than the other, such as to justify

unequal treatment. *B & L Prods., Inc. v. 22nd Dist. Agric. Ass'n*, 394 F. Supp. 3d 1226, 1250 (S.D. Cal. 2019).

Here, Defendants placed substantially unequal burdens on people who participated in racial justice protests, including Plaintiffs Nash and Zapata. FAC ¶¶ 22, 51-55, 61, 63-64, 81-82, 98-101, 102-106, 123-133. Defendants have not met their burden to distinguish between racial justice protesters and organized white supremacist groups, or other protest groups generally. Defendants have failed to provide any specific arguments challenging the elements of this claim, which should leave the facts and circumstances up to a jury to decide.

**IV.   CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, Defendants' Motion to Strike and Defendants' Motion for a More Definite Statement.

DATED: March 10, 2022

/s/ Tifanei Ressl-Moyer
Tifanei Ressl-Moyer

LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA
Tifanei Ressl-Moyer
tresslmoyer@lccrsf.org
Lauren Carbajal
lcarbajal@lccrsf.org

CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER
Pilar Gonzalez Morales
pgonzalez@creeclaw.org
Elizabeth Ballart
eballart@creeclaw.org

*Attorneys for Plaintiffs*