UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAN WHITE, JERONIMO AGUILAR, LOREN WAYNE KIDD, LYRIC NASH, NICOLLETTE JONES, and ODETTE ZAPATA,<br><br>               Plaintiffs,<br><br>     v.<br><br>SACRAMENTO POLICE DEPARTMENT; THE CITY OF SACRAMENTO; DANIEL HAHN; and DOES 1-200,<br><br>               Defendants. | No. 2:21-cv-02211-JAM-DB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DENYING DEFENDANTS' MOTION TO STRIKE; AND DENYING DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT** |

I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND[1]

Megan White, Jeronimo Aguilar, Loren Wayne Kidd, Lyric Nash, Nicollette Jones, and Odette Zapata ("Plaintiffs") filed a First Amended Complaint, asserting eleven claims against the Sacramento Police Department ("SPD"), the City of Sacramento, and SPD Chief Daniel Hahn for their response to a series of racial justice demonstrations between March 2020 and November 2021.  See First

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for April 19, 2022.

1

1   Am. Compl. ("FAC"), ECF No. 4.  Plaintiffs are six individuals
2   who attended these demonstrations.  Id.
3       Megan White, a 34-year-old black woman, alleges that she
4   observed racial justice protests and attempted to provide basic
5   first aid to protest participants in 2020 and 2021, during which
6   the SPD injured her.  Id. ¶ 17.  Specifically, she suffered
7   bruising, chronic knee pain and hip pain, chemical burns, and a
8   severe shoulder injury.  Id.  She also observed law enforcement
9   restrain and assault racial justice protesters.  Id.  She alleges
10  compliance with the Government Claims Act.  Id.
11      Jeronimo Aguilar, a 29-year-old Chicano man, alleges that he
12  attended protests in May and June 2020 and, as a result, SPD
13  officers targeted him, surveilled him, and illegally raided his
14  home.  Id. ¶ 18.  He does not allege compliance with the
15  Government Claims Act.  Id.
16      Loren Kidd, a 34-year-old white man, alleges he attended
17  protests between May 2020 and January 2021, where the SPD shot
18  him with impact munitions and shoved him into and over parked
19  cars.  Id. ¶ 19.  He further alleges the SPD failed to
20  accommodate his disability when he was arrested, and watched as
21  white supremacist groups attacked him without intervening.  Id.
22  He alleges compliance with the Government Claims Act.  Id.
23      Lyric Nash, a 21-year-old biracial woman, alleges that she
24  attended racial justice protests between May 2020 and February
25  2021, and that the SPD targeted her with verbal harassment and
26  threats.  Id. ¶ 20.  She alleges SPD officers also routinely
27  bull-rushed her and other protestors, and indiscriminately fired
28  pepper balls, foam-tipped bullets, and beanbag rounds into

1   crowds.  Id.  She did not allege compliance with the Government

2   Claims Act.  Id.

3      Nicollette Jones, a 34-year-old woman of Punjabi Asian and

4   European descent, alleges that she participated in racial justice

5   protests from May 2020 to January 2021.  Id. ¶ 21.  She alleges

6   the SPD knows her by name and regularly targets her at protests.

7   Id.  In May 2020, the SPD kicked an active teargas canister

8   toward her and shot impact munitions into her body least 11

9   times.  Id.  She did not allege compliance with the Government

10  Claims Act.  Id.

11     Odette Zapata, a 29-year-old Latinx woman, alleges she

12  attended multiple protests and witnessed law enforcement's

13  pattern of violent escalation against protesters, while

14  permitting white supremacists to use violence against community

15  members.  Id. ¶ 22.  She has since been the target of aerial

16  surveillance and visits to her home.  Id.  She did not allege

17  compliance with the Government Claims Act.  Id.

18     In response to these events, White filed the initial

19  complaint on November 30, 2021.  See Compl., ECF No. 1.  On

20  December 30, 2021, the FAC – which added the five additional

21  plaintiffs - was filed.  See FAC.  Of the eleven claims in the

22  FAC, all Plaintiffs assert the first ten claims against all

23  Defendants, while only Kidd brings the eleventh claim under the

24  American Disabilities Act ("ADA").  Id.  Through this action,

25  Plaintiffs seek to "vindicate the rights of Californians

26  protesting against racism, white supremacy, and police violence

27  in Sacramento, California."  Id. ¶ 1.  They claim the "City of

28  Sacramento and its Police Department have conditioned the public

1   to fear the violent and targeted force of the state when

2   attending a protest, a demonstration or even a vigil for racial

3   justice." Id.  Accordingly, they seek compensatory relief and

4   injunctive relief to "stop the City of Sacramento and its Police

5   Department from continuing to employ discriminatory, violent

6   tactics against protesters." Id.

7        Before the Court is the City of Sacramento and Daniel Hahn's

8   ("Defendants") motion to dismiss, motion to strike, and motion

9   for a more definite statement.[2]  See Mot., ECF No. 14-1.

10  Plaintiffs filed an opposition.  See Opp'n, ECF No. 17.

11  Defendants replied.  See Reply, ECF No. 20.  For the reasons set

12  forth below, the Court grants in part and denies in part

13  Defendants' motion to dismiss, denies Defendants' motion to

14  strike, and denies Defendants' motion for a more definite

15  statement.

16

17                    II.   OPINION

18       A.   Legal Standard

19       Federal Rule of Civil Procedure 8 requires "a short and

20  plain statement of the claim showing that the pleader is

21  entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Dismissal is

22  appropriate under Federal Rule of Civil Procedure 12(b)(6) when

23  a plaintiff's allegations fail "to state a claim upon which

24  relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive

25  a motion to dismiss [under 12(b)(6)], a complaint must contain

26  sufficient factual matter, accepted as true, to state a claim

27  _____

28  [2] Daniel Hahn is now retired but was the Sacramento Police Chief
    at all material times.  FAC ¶ 25; see also Mot. at 6.

                              4

1  for relief that is plausible on its face."  Ashcroft v. Iqbal,

2  556 U.S. 662, 678 (2009).  While "detailed factual allegations"

3  are unnecessary, the complaint must allege more than

4  "[t]hreadbare recitals of the elements of a cause of action,

5  supported by mere conclusory statements."  Id.  At this stage,

6  the Court "must take all of the factual allegations in the

7  complaint as true."  Id.  But it need not "accept as true a

8  legal conclusion couched as a factual allegation."  Id.  "In

9  sum, for a complaint to survive a motion to dismiss, the non-

10  conclusory 'factual content,' and reasonable inferences from

11  that content, must be plausibly suggestive of a claim entitling

12  the plaintiff to relief."  Moss v. U.S. Secret Serv., 572 F.3d

13  962, 969 (9th Cir. 2009).

14       B.   Analysis: Motion to Dismiss

15            1.   State Law Claims

16       Defendants first move to dismiss Plaintiffs' seventh,

17  eighth, ninth, and tenth claims under state law for failure to

18  comply with the claims filing requirements set forth in the

19  Government Claims Act.  Mot. at 8-10.

20       Plaintiffs must allege either they "complied with the claims

21  presentation requirement, or that a recognized exception or

22  excuse for noncompliance exists," and if plaintiffs fail to

23  include those necessary allegations, their claims are subject to

24  dismissal.  Gong v. City of Rosemead, 226 Cal.App.4th 363, 374

25  (2014); see also Karim-Panahi v. Los Angeles Police Dept., 839

26  F.2d 621, 627 (9th Cir. 1988)(affirming the district court's

27  dismissal of state law claims for failure to allege compliance).

28  As to timing, plaintiffs must present a claim relating to a cause

of action for personal injury no later than six months after accrual of the cause of action.  See Cal. Gov. Code § 911.2. When a plaintiff fails to present a claim within the six-month timeframe, a written application may be made to the public entity for leave to present the claim within a reasonable time not to exceed one year from the accrual of the cause of action.  Id. § 911.4.

For these state law claims, which all six Plaintiffs bring, Defendants contend only two of the Plaintiffs, White and Kidd, properly alleged compliance with the Government Claims Act.  Mot. at 10.  Because the remaining four Plaintiffs, Aguilar, Nash, Jones, and Zapata, failed to allege compliance, Defendants argue the seventh, eighth, ninth and tenth claims against them must be dismissed.  Id.

In opposition, Plaintiffs concede: "The City is correct that Plaintiffs Jones, Nash, and Zapata cannot bring state law claims because they did not comply with the Government Claims Act. . . Plaintiffs do not oppose the dismissal of state law claims for damages made by Ms. Jones, Ms. Nash, and Ms. Zapata."  Opp'n at 7-8.  However, Plaintiffs argue Aguilar may bring the state law claims because although he did not allege compliance with the Government Claims Act in the FAC, he did in fact comply and therefore could plead compliance if granted leave to amend.  Id. Insisting the Court is bound by allegations in the FAC and cannot consider Plaintiffs' exhibits in opposition, Defendants counter that Aguilar's claims are barred as untimely because he did not submit his claims within six months and did not seek leave to bring a late claim.  Reply at 3.  But failure to allege

compliance with the Government Claims Act "merely subject[s]" a claim to a motion to dismiss; the Court "has discretion to dismiss with leave to amend to obtain compliance with the [Government Claims Act], unless it 'could not possibly be cured by the allegation of other facts.'" Robinson v. Alameda Cty., 875 F.Supp.2d 1029, 1044 (N.D. Cal. 2012). Here, it is not clear that Aguilar "could not possibly cure" this defect. Id. Therefore, the Court dismisses his state law claims for failure to plead compliance, but grants leave to amend. If he elects to amend, Aguilar must clearly indicate how his claims were timely filed and thus not time-barred. See Reply at 3.

In sum, Jones, Nash, and Zapata's state law claims are dismissed with prejudice, while Aguilar's state law claims are dismissed without prejudice.

### 2. Shotgun Pleading

Defendants next argue that Plaintiffs' shotgun pleading violates Federal Rule of Civil Procedure 8. Mot. at 11. That Rule requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations. . . they are unacceptable." McLaughlin v. Castro, No. 1:17-cv-001597-DAD-MJS, 2018 WL 1726630, at *4 (E.D. Cal. Apr. 10, 2018). According to Defendants, the FAC is a shotgun pleading because: "[it] attempts to tie together separate and distinct fact patterns in support of eleven causes of action. The Plaintiffs had separate

7

interactions with SPD over the course of approximately 16 months. From the 43-page FAC it is nearly impossible to discern which allegations are conclusions or are merely grievances with SPD, rather than facts to support causes of action.  The FAC is neither short nor plain.  It is impossible for the Defendants to determine which factual allegations are intended to support the claims for relief."  Mot. at 11.  Plaintiffs counter that Defendants' argument is not well supported in law in that Defendants cite to an unpublished Eastern District of California decision and a non-binding Northern District of Georgia decision. Opp'n at 3-4.  Plaintiffs also argue the FAC is not a shotgun pleading because it sets forth facts for each individual's claim and distinguishes between Defendants with specificity, including dates, locations, times, and names where known.  Id. at 4 (citing to FAC ¶¶ 36-38, 41, 46, 49, 50, 52, 57-59, 62, 86, 92, 95, 96, 98-101, 111, 129, 134, 141, 167, 170-172).  Additionally, the FAC details the specific harm endured by each Plaintiff.  Id. (citing to FAC ¶¶ 47, 50, 55, 60, 61, 66, 68, 76-77, 84-85, 86, 89, 92, 96, 106, 114-115, 117-122).  Plaintiffs point out the FAC includes headings and subheadings to demarcate incidents giving rise to the claims and their elements.  Id.  Finally, Plaintiffs argue the various dates and times spanning over the course of many months are not "overwhelming," as Defendants contend, but instead demonstrate a pattern of conduct over time.  Id. at 5 (citing to FAC ¶¶ 123-124, 130, 132, 163, 165-167).

In response, Defendants double down on their argument that the FAC is a shotgun pleading which does not provide them fair notice.  Reply at 4.  A brief comparison to Defendants' cited

1    authority, McLaughlin, however, confirms the sufficiency of

2    Plaintiffs' allegations here.  See Mot. at 11.  In McLaughlin,

3    the court found the pro se complaint lumping multiple defendants

4    together and failing to identify which facts supported particular

5    claims to be a "prohibited 'shotgun pleading.'"  2018 WL 1726630

6    at *3-4.  The Court agrees with Plaintiffs that the FAC here is a

7    far cry from the pro se complaint in McLaughlin.  Opp'n at 4.

8    Nor do Defendants explain why they cannot get the details and

9    specificity they claim they need through discovery.

10        Accordingly, Defendants' argument that the entire FAC should

11   be dismissed as a shotgun pleading fails and Defendants' motion

12   to dismiss the FAC for this reason is denied.

13              3.   Nash and Zapata's Section 1983 Claims

14        Next, Defendants move to dismiss Nash and Zapata's Section

15   1983 claims - the first through fourth causes of action in the

16   FAC – contending neither of these Plaintiffs state a plausible

17   claim for violation of a federal right.  Mot. at 11-13.

18   Insisting the opposite, Plaintiffs dedicate a significant portion

19   of their brief to marching through how Nash and Zapata have

20   stated claims for violation of their First, Fourth, and

21   Fourteenth Amendment rights.  See Opp'n at 10-15.

22              a.   First Amendment

23        Nash and Zapata's first and second Section 1983 claims are

24   for retaliation and viewpoint discrimination in violation of the

25   First Amendment.  See FAC at 34-35.  To state a First Amendment

26   retaliation claim, Plaintiffs first must plausibly allege they

27   were "engaged in a constitutionally protected activity."  Index

28   Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 827 (9th

1  Cir. 2020).  "Activities such as demonstrations, protest marches,

2  and picketing are clearly protected by the First Amendment."

3  Collins v. Jordan, 110 F.3d 1363, 1371 (9th Cir. 1996)(internal

4  citations omitted).  Here, Nash and Zapata allege they attended

5  racial justice protests.  FAC ¶¶ 20, 22, 51, 61, 63.  This

6  plausibly alleges the first element of their retaliation claims:

7  engagement in a constitutionally protected activity.

8      Next, Plaintiffs must allege "Defendants' actions would

9  chill a person of ordinary firmness from continuing to engage in

10  the protected activity," and that Plaintiffs' "protected activity

11  was a substantial or motivating factor" in Defendants' conduct.

12  Index Newspapers, 977 F.3d at 827.  The use of indiscriminate

13  force against protesters supports an inference that police

14  officers' actions were substantially motivated by the plaintiff's

15  protected First Amendment activity.  NAACP of San Jose/Silicon

16  Valley v. City of San Jose, Case No. 21-cv-1705-PJH, 2021 WL

17  4355339, at *11 (N.D. Cal. Sept. 24, 2021)("[G]iven that the

18  protestors were specifically protesting police misconduct, it is

19  reasonable to allege that the protestors' viewpoint was a

20  substantial or motivating cause – even if not necessarily the

21  sole cause – behind the defendants' conduct.").

22      As to Nash, she alleges she attended several protests in the

23  City of Sacramento between May 2020 through February 2021 where

24  SPD officers without warning or provocation "fir[ed] chemical

25  agents, pepper balls, and beanbags indiscriminately into the

26  crowds."  FAC ¶¶ 61, 64.  She alleges SPD officers surveilled her

27  following the protests.  Id. ¶¶ 102-106.  While she was in a

28  vehicle with other protesters, SPD officers stopped them and

1    mocked the calls for police accountability.  Id. ¶ 104.  As to

2    Plaintiff Zapata, she similarly alleges the SPD surveilled her

3    after she participated in protests; specifically, they came to

4    her home without notice or a warrant after protests, followed her

5    in marked police vehicles, and tracked her with aerial

6    surveillance.  Id. ¶¶ 22, 98-101.  Like Nash, Zapata also

7    witnessed SPD officers shoot impact munitions and tear gas into

8    the crowd without provocation.  Id. ¶¶ 53-55.  According to

9    Plaintiffs, "these allegations are robust, specific, and clearly

10   sufficient to" give an inference to retaliation such that their

11   First Amendment retaliation claims can survive the motion to

12   dismiss.  Opp'n at 11.

13        Likewise, they contend their First Amendment viewpoint

14   discrimination claims pass muster.  Id. at 12-13.  To state a

15   viewpoint discrimination claim, plaintiffs must again make the

16   threshold showing they were engaged in a constitutionally

17   protected activity.  Giebel v. Sylvester, 244 F.3d 1182, 1186

18   (9th Cir. 2001).  The act of protesting qualifies.  Collins, 110

19   F.3d at 1371.  Plaintiffs then must plausibly allege: (1) on its

20   face, a government restriction on speech "distinguishes between

21   types of speech or speakers based on viewpoint expressed, or (2)

22   though neutral on its face, the regulation is motivated by a

23   desire to suppress a particular viewpoint."  Moss v. U.S. Secret

24   Serv., 711 F.3d 941, 959 (9th Cir. 2013).

25        Here, Nash and Zapata allege they witnessed and experienced

26   firsthand Defendants' use of indiscriminate force on racial

27   justice protests.  FAC ¶¶ 20, 22, 53-55, 61, 64, 104.  By

28   contrast, they witnessed the SPD treat white supremacist

                                   11

1   protestors better, in some cases arresting victims of white

2   supremacist violence instead of the white supremacist protestors.

3   Id. ¶¶ 22, 81-82.  They also allege Sacramento residents noticed

4   the disparity in how police treated white supremacist protestors

5   and racial justice protestors and called the City Council to

6   attest to this disparity.  Id. ¶ 128.  According to Plaintiffs,

7   these allegations support an inference that the Defendants were

8   motivated by a desire to suppress their particular viewpoints.

9   Opp'n at 13.

10      Significantly, Defendants did not respond to Plaintiffs'

11  arguments as to why Nash and Zapata plausibly state First

12  Amendment retaliation and viewpoint discrimination claims.  See

13  Reply; see also Resnick v. Hyundai Motor America, Inc., Case No.

14  CV 16-00593-BRO (PJWx), 2017 WL 1531192, at *22, (C.D. Cal. Apr.

15  13, 2017) ("Failure to oppose an argument . . . constitutes

16  waiver of that argument.").  Accordingly, the Court denies

17  Defendants' motion as to Nash and Zapata's First Amendment

18  claims.

19              b.   Fourth Amendment

20      Nash and Zapata contend they also plausibly stated claims

21  that Defendants violated their Fourth Amendment rights to be free

22  from unreasonable seizure and excessive force.  Opp'n at 13-14.

23      "Determining whether the force used to effect a particular

24  seizure is 'reasonable' under the Fourth Amendment requires a

25  careful balancing of the 'nature and quality of the intrusion on

26  the individual's Fourth Amendment interests' against the

27  countervailing governmental interests at stake."  Graham v.

28  Connor, 490 U.S. 386, 396 (1989).  "This balancing test entails

consideration of the totality of the facts and circumstances in the particular case." Blanford v. Sacramento Co., 406 F.3d 1110, 1115 (9th Cir. 2005) (citing Graham, 490 U.S. at 396). In Nelson v. City of Davis, the Ninth Circuit explained: "the use of pepper spray, and a failure to alleviate its effects, was an unreasonable application of force against individuals who were suspected of only minor criminal activity, offered only passive resistance, and posed little to no threat of harm to others." 685 F.3d 867, 885 (2012). Similarly here, Nash and Zapata point to the SPD's "intentional and indiscriminate use of chemical weapons and impact munitions" on them when neither posed a threat. FAC ¶¶ 55, 61. SPD officers also stopped Nash on January 20, 2021, approached her at gunpoint, and then searched and taunted her for her participation in a police accountability protest. Id. ¶ 104. According to Plaintiffs, these facts are sufficient to state excessive force claims. Opp'n at 13-14. Again, Defendants failed to respond to Plaintiffs' arguments. See Reply; see also Resnick, 2017 WL 1531192, at *22.

Accordingly, the Court denies Defendants' motion as to Nash and Zapata's Fourth Amendment claims.

c.   Fourteenth Amendment

Finally, Nash and Zapata contend they plausibly alleged Defendants violated their Fourteenth Amendment Equal Protection rights. Opp'n at 14-15.

Under the Equal Protection Clause, the "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views . . . [a]nd it may not select which

13

issues are worth discussing or debating in public facilities."
Police Dep't of City of Chicago v. Mosley, 408 U.S. 92, 96
(1972).  Rather "there is an 'equality of status in the field of
ideas,' and the government must afford all points of view an
equal opportunity to be heard."  Id.  Any "exclusions from a
public forum must be carefully scrutinized."  Id. at 98-99.
Additionally, the government has the burden of showing one group
posed a greater safety risk to the public than the other, to
justify unequal treatment.  B & L Prods., Inc. v. 22nd Dist.
Agric. Ass'n, 394 F.Supp.3d 1226, 1250 (S.D. Cal. 2019).

     Here, Nash and Zapata allege Defendants did not treat all
points of view equally and instead treated racial justice
protests worse than "organized white supremacist groups or other
protest groups generally."  Opp'n at 15 (citing to FAC ¶¶ 22, 51-
55, 61, 63-64, 81-82, 98-101, 102-106, 123-133).  Yet, Defendants
have not shown the racial justice protest groups posed a greater
safety risk than other protest groups.  Id.

     Defendants did not respond to these arguments.  See Reply
see also Resnick, 2017 WL 1531192, at *22.  Accordingly, the
Court denies Defendants' motion as to Nash and Zapata's
Fourteenth Amendment claims.

          4.   Conspiracy Claims

     Lastly, Defendants move to dismiss Plaintiffs' fifth and
sixth causes of action for conspiracy pursuant to 42 U.S.C 1985
and 42 U.S.C. 1986.  Mot. at 13.  In opposition, Plaintiffs
concede they improperly pled their conspiracy claims as follows.
Opp'n at 8-9.  First, with respect to the fifth cause of action,
they cited to "42 U.S.C § 1985 where 42 U.S.C § 1983 applies most

14

appropriately." Id. at 8.  Second, with respect to the sixth
cause of action, they cited to "U.S.C. § 1986, where 42 U.S.C. §
1983 applies more appropriately." Id. at 8 n.6.  Plaintiffs
request leave to amend to correct these mistakes, id. at 8 n.5,
then proceed to argue that under Section 1983, they have
plausibly stated their conspiracy claims, id. at 8-10.  However,
as Defendants argue, this "attempt to rewrite the FAC in the
opposition is not proper."  Reply at 3; see also Schneider v.
Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)
(recognizing a complaint cannot be amended through an opposition
to a motion to dismiss).

   PlaintiffS' fifth and sixth causes of action are dismissed
without prejudice.  See Eminence Cap., LLC v. Aspeon, Inc., 316
F.3d 1048, 1052 (9th Cir. 2003)("Dismissal with prejudice and
without leave to amend is not appropriate unless it is clear
. . . that the complaint could not be saved by amendment.").

   C.   Analysis: Motion to Strike

   Defendants additionally move to strike portions of the FAC
as immaterial and impertinent.  Mot. at 14.  Specifically, they
request the Court strike Paragraphs 1 through 10, Paragraphs 28
through 41, and Paragraphs 123 through 133.  Id.

   Federal Rule of Civil Procedure 12(f) authorizes the Court
to strike any portion of a complaint that is "redundant,
immaterial, impertinent or scandalous."  Fed. R. Civ. P. 12(f).
However, "[m]otions to strike are disfavored and infrequently
granted."  Neveu v. City of Fresno, 392 F.Supp.2d 1159, 1170
(E.D. Cal. 2005).  It must be "clear that the matter to be
stricken could have no possible bearing on the subject matter of

15

the litigation." Id. Moreover, "courts often require a showing of prejudice by the moving party." Wynes v. Kaiser Permanente Hosp., No. 2:10-cv-00702-MCE-GGH, 2011 WL 1302916, at *12 (E.D. Cal. Mar. 11, 2011).

Plaintiffs urge the Court to reject Defendants' motion to strike, calling it frivolous. Opp'n at 6-7. They argue each paragraph Defendants ask this Court to strike relates to the claims in this case as they reflect Defendants' "long history of discriminatory and deadly policing against people who protest racial injustice." Id. at 6. Nor are any of the paragraphs spurious or scandalous; they "evince the [SPD]'s pattern of disregard to the rights of racial justice protestors." Id. at 7.

In their reply, Defendants emphasize they seek to strike "only 35 paragraphs, out of 243 paragraphs in the FAC" and that these paragraphs do not eliminate the "history of discrimination towards racial justice protesters." Reply at 4-5. However, Defendants do not clearly show these paragraphs "could have no possible bearing" on the case. See Neveu, 392 F.Supp.2d at 1170. Nor have they shown prejudice. See Wynes, 2011 WL 1302916, at *12. Defendants' motion to strike is therefore denied.

D.   Analysis: Motion for a More Definite Statement

Finally, Defendants move for a more definite statement. Mot. at 14-15. Federal Rule of Civil Procedure 12(e) authorizes a party to move for a more definite statement where a pleading "is so vague or ambiguous that a party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "A Rule 12(e) motion is proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being

16

1    asserted." <u>Sagan v. Apple Comput., Inc.</u>, 874 F.Supp. 1072, 1077

2    (C.D. Cal. 1994).  These motions "are rarely granted because of

3    the minimal pleading requirements of the Federal Rules."  <u>Id.</u>

4    "[W]here the information sought by the moving party is available

5    and/or properly sought through discovery the motion [for a more

6    definite statement] should be denied." <u>Famolare, Inc. v. Edison</u>

7    <u>Bros. Stores, Inc.</u>, 525 F.Supp. 940, 949 (E.D. Cal. 1981).

8        Here, Defendants contend the "lengthy shotgun FAC does not

9    allow the Defendants to properly frame a responsive pleading" and

10   ask the Court to order Plaintiffs to further amend and provide a

11   more definite statement of their claims.  Mot. at 15.  Plaintiffs

12   counter that to the extent Defendants seek even more specificity

13   in dates, times, locations, and witnesses, those facts will be

14   available in discovery.  Opp'n at 6.[3]  The Court agrees.

15       Defendants have not shown this is the rare case where a

16   motion for a more definite statement should be granted.  <u>See</u>

17   <u>Sagan</u>, 874 F.Supp. at 1077.  Accordingly, the Court denies

18   Defendants' motion for a more definite statement.

19

20                        III.   ORDER

21       For the reasons set forth above, the Court GRANTS IN PART

22   and DENIES IN PART Defendants' motion to dismiss.  Specifically,

23   the Court:

24       (1)  DISMISSES WITH PREJUDICE Jones, Nash, and Zapata's

25            state law claims (FAC 7th, 8th, 9th and 10th claims for

26            relief);

27   _____

28   [3] Defendants' reply is silent as to the motion for a more
     definite statement.  <u>See</u> Reply.

1    (2)    DISMISSES WITHOUT PREJUDICE Aguilar's state law claims
2           (FAC 7th, 8th, 9th and 10th claims for relief);
3    (3)    DISMISSES WITHOUT PREJUDICE Plaintiffs' conspiracy
4           claims (FAC 5th and 6th claims for relief); and
5    (4)    DENIES Defendants' motion to dismiss as to the
6           remaining claims.

7       Additionally, the Court DENIES Defendants' motion to strike
8  and DENIES Defendants' motion for a more definite statement.  If
9  Plaintiffs elect to amend their complaint, they shall file a
10 second amended complaint within twenty days (20) of this Order.
11 Defendants' responsive pleadings are due within twenty days (20)
12 thereafter.

13      IT IS SO ORDERED.

14 Dated: June 6, 2022

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28