UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MEGAN WHITE, JERONIMO AGUILAR, LOREN WAYNE KIDD, LYRIC NASH, NICOLLETTE JONES, and ODETTE ZAPATA,<br><br>                    Plaintiffs,<br><br>        v.<br><br>SACRAMENTO POLICE DEPARTMENT, THE CITY OF SACRAMENTO, and DANIEL HAHN,<br><br>                    Defendants. | No.  2:21-cv-02211-JAM-SCR<br><br>**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

## I.    INTRODUCTION

This matter is before the Court on Plaintiffs Megan White, Jeronimo Aguilar, Loren Kidd, Lyric Nash, Nicolette Jones, and Odette Zapata's motion for attorneys' fees and costs.  ECF No. 186, Plaintiffs' Memorandum of Points and Authorities ("Mot.").  Plaintiffs request $2,579,483.51 in fees for the work of 17 attorneys, and 7 paralegals and staff, from 3 different, concurrently staffed firms and organizations since March 2021.  Mot. at 2-3.  Plaintiffs also request reimbursement for $54,833.38 in costs, and another $74,350.13 for their legal team's work preparing the pending motion for fees and costs.  Mot. at 2-4; see also ECF No. 186-1, ¶ 57; ECF No. 186-3, ¶ 10;

ECF No. 186-6, ¶ 34; ECF No. 186-8, ¶ 44.  Defendants Sacramento Police Department, City of Sacramento, and Daniel Hahn oppose Plaintiffs' motion (ECF No. 16 ("Opp'n")), arguing an award for fees and costs should be limited to $300,000, and $25,000, respectively.  Plaintiffs filed a reply and an amended declaration to the reply.  ECF Nos. 188 ("Reply"), 189. Plaintiffs requested an additional $17,950.50 in fees for their work on the reply.[1]  Reply at pg. 18.

For the reasons detailed below, the Court orders an award of $230,247 in attorneys' fees and $19,192 in costs.  The Court denies Plaintiffs' request for additional fees related to the preparation of the pending motion and reply.

II.   BACKGROUND

Since the factual background and procedural history have been extensively summarized and documented in a number of orders by this Court, the Court only provides a brief summary here. See, e.g., ECF Nos. 22, 92, 95, 106, 175.

This case originated with a complaint filed by Plaintiff Megan White in November 2021.  ECF No. 1.  A month later, a first amended complaint was filed by all 6 named Plaintiffs, asserting 11 causes of action.  ECF No. 4.  Defendants filed a motion to dismiss, and after full briefing, the Court dismissed all of Plaintiffs Jones, Nash, and Zapata's state law claims (causes of action 7, 8, 9 and 10) with prejudice, dismissed Plaintiff Aguilar's same state law claims without prejudice, and dismissed all Plaintiffs' conspiracy claims, the 5th and 6th causes of

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g); see also ECF No. 190.

action, without prejudice.  ECF No. 22.

Plaintiffs' second amended complaint was filed in July 2022, asserting 11 causes of action against Defendants.  ECF No. 31.  After settlement conferences and a discovery dispute, Defendants filed a motion for partial summary judgment.  See ECF No. 78.  Defendants motion was successful on the 5th and 6th causes of action, for conspiracy and failure to intervene, respectively.  See ECF Nos. 92, 106.  After further briefing, the Court also granted summary judgment on Plaintiff Kidd's claim for failure to accommodate, the 11th cause of action.  See ECF No. 95.  The matter was subsequently confirmed for jury trial.  See ECF No. 108.

Days before trial was scheduled to begin, the parties reached a partial settlement, and the trial was rescheduled and converted to a bench trial.  See ECF Nos. 127, 128.  The settlement resolved all Plaintiffs' requests for monetary damages in exchange for $350,000, but did not resolve claims for declaratory relief and injunctive relief.  See ECF No. 127.

The case proceeded to trial at the end of March.  ECF Nos. 128, 138, 143, 144, 147, 152, 153, 154, 157.  The bench trial lasted 8 days, conducted generally between 9:15 a.m. and 2 p.m., with one day having a slightly longer session and one having only an approximately 2.5 hour session.  A verdict was reached and judgment was entered in favor of the Defendants on all of Plaintiffs' causes of action and claims for injunctive relief.  ECF Nos. 175, 177.  Plaintiffs abandoned their claims for declaratory relief and did not present evidence supporting these claims nor make any requests for the Court to provide declaratory

relief at trial.  See generally ECF No. 127, 175.  Accordingly, judgment was also entered in favor of Defendants on Plaintiffs' claims for declaratory relief.  ECF No. 177.

Plaintiffs' claims stem from allegations that the "Sacramento Police Department's policies and practices are discriminatory, racist, and inhumane," Defendants' failure to properly train and discipline its police officers[] were the moving forces behind the constitutional violations they suffered," and a permanent injunction was necessary to prevent ongoing harm.  See ECF Nos. 31, 175.  Indeed, the majority of the operative complaint focused on evidence supporting Plaintiffs' claims for declaratory and injunctive relief.  Id.  Although this was the thrust of Plaintiffs' case, the Court entered a verdict for the Defendants on these issues.  See ECF Nos. 175, 177.  Indeed, the Court found the Plaintiffs failed to introduce evidence at trial demonstrating they had standing for permanent injunctive relief on at least one of their claims and that "Plaintiffs did not introduce any evidence of allegedly unconstitutional conduct by [Defendants] during public protests over the past five years from which th[e] Court could . . . ," grant the injunctive relief Plaintiffs' sought.  ECF No. 175.

III. OPINION

A.   Legal Standard

"[T]he Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authoriz[es] the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation."  Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). The prevailing party "should ordinarily recover an attorney's fee

4

unless special circumstances would render an award unjust," (id. (quoting S.Rep.No. 94-1011, pg. 4 (1976), U.S. Code Cong. & Admin News 1976, pg. 5912 and Newman v. Piggie Park Enterprises, 390 U.S. 400, 402 (1968)) (internal quotations removed)), and "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Id. at 437. While the Ninth Circuit has clarified "it is not per se unreasonable for the prevailing party [] to be awarded an amount of attorney's fees that exceeds the amount of money recovered by [the] client," (Gonzalez v. City of Maywood, 729 F.3d 1196, 1200 (9th Cir. 2013)), it is critical for a district court to "strike a balance between granting sufficient fees . . . and avoiding a windfall to counsel." Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008) (citations omitted).

In this case, it is not disputed that Plaintiffs met the "statutory threshold" to be considered the prevailing party. See Hensley, 461 U.S. at 433; Farrar v. Hobby, 506 U.S. 103, 111 ("[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim [including,] an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." (citations omitted)); Mot., Opp'n, and Reply, generally; Maher v. Gagne, 448 U.S. 122, 132 n.15 (1980) (supporting the analysis of Plaintiffs' concurrent request for fees pursuant to Cal. Civ. Code §§ 52.1(i) and 51.7-52(b)(3) under 42 U.S.C. § 1988). Defendants, however, contend the Plaintiffs should only be considered the prevailing party as to

5

their damages claims, "involv[ing] separate legal theories," and accordingly the fee award should be severed. See, e.g., Opp'n at 9-11. Since the Plaintiffs are technically the prevailing party, the Court turns to the lodestar method to assess the Plaintiffs' request for fees and addresses the Defendants' arguments regarding degree of success and separability of Plaintiffs' claims, *infra*, at II.C. See Gonzalez, 729 F.3d at 1202.

The lodestar method entails determining a reasonable hourly fee rate for each attorney at "the prevailing local rate for an attorney of the skill required to perform the litigation." Moreno, 534 F.3d at 1111 (citing Blum v. Stenson, 465 U.S. 886, 895 (1984)). The Court then multiplies this hourly rate by "the number of hours reasonably expended on the litigation . . . ." Hensley, 461 U.S. at 433. The Court must provide a clear explanation for its determination of what constitutes a reasonable fee. Moreno, 534 F.3d at 1111.

The Court begins, below, by determining the reasonable hourly rates for attorneys and staff that worked on this matter for the Plaintiffs, before addressing the reasonable number of hours for which Plaintiffs' legal team should receive compensation.

B.   Attorneys' and Staff's Hourly Rates

Plaintiffs request the Court set their attorneys' hourly rates between $901.39 and $373.67, and rates from $162.74 to $203.82 per hour for paralegals and other staff, using the Laffey Matrix, with a reduction for the Sacramento market. See, e.g., Mot. at 2-4, 19-24. Defendants argue Plaintiffs' requested rates are unreasonable, citing other cases within this

district generally setting rates closer to $400-$600 for attorneys, and note courts in the Eastern District have generally rejected the Laffey Matrix as a tool to set hourly rates.  Opp'n at 16-18.  The Court agrees the Laffey Matrix is not a helpful starting point to determine reasonable hourly rates and instead follows the Supreme Court's counsel to look to "the prevailing market rates in the relevant community" (Blum v. Stenson, 456 U.S. 886, 895-96 (1984)), which is "the forum in which the district court sits." Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 979 (9th Cir. 2008) (citing Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997)).

Several recent cases compiling and analyzing fee awards from this district are instructive: U.S. ex rel. Terry v. Wasatch Advantage Group, LLC., No. 15-cv-00799, 2025 WL 406589 (E.D. Cal. Feb. 5, 2025), Goodson v. County of Plumas, No. 18-cv-03105, 2024 WL 99847 (E.D. Cal. Jan. 9, 2024), and Diaz v. United Parcel Service, Inc., No. 22-cv-00246, 2023 WL 8622325 (E.D. Cal. Dec. 13, 2023).  In collecting cases from the Eastern District, the Terry court observed:

> Judges within this District's Sacramento courthouse have approved a relatively wide range of hourly rates in recent years, depending on the type of case and its complexity. At the higher end of this spectrum, courts have awarded fees based on hourly rates between $600 and $700 per hour for attorneys with thirty years' experience or more who represent clients in class actions and complex civil cases. Courts commonly award rates between $500 and $600 per hour in complex civil cases for attorneys with multiple decades' experience, but hourly rates between $400 and $500 are more common. Paralegals are compensated reasonably between $100 and $250 per hour within this District, depending on experience.  Courts within this District and the broader Ninth Circuit also have issued orders compensating the time of certified law school students and pre-graduation law clerks between $125 and $150

7

per hour.

2025 WL 406589, at *5 (E.D. Cal. Feb. 5, 2025) (citations omitted).

Similarly, in Goodson, the court summarized a wide range of fee awards to determine a reasonable rate within this district:

> [F]ees awarded in other civil cases involving some level of complexity in this district and by judges in this courthouse commonly are greater than $500 per hour, and in some cases $600 per hour, for reputable attorneys with a great deal of relevant experience and $300 or less for attorneys with less than ten years' experience, depending on the type of litigation and other circumstances. See, e.g., Diaz v. United Parcel Serv., Inc., No. 22-00246, 2023 WL 8622325, at *17 (E.D. Cal. Dec. 13, 2023) (reporting results of "comprehensive survey of fees awarded" in this district, in determining appropriate fees in class action settlement); Avery v. Akima Support Operations, LLC, No. 19-00924, 2022 WL 4473211, at *13 (E.D. Cal. Sept. 26, 2022) (describing results of similar analysis, also in class action settlement context). In general, however, most other published cases did not involve complex discrimination claims and did not go to trial. See, e.g., Schmidt v. Shasta Cnty. Marshal's Off., No. 14-02471, 2020 WL 1158083, at *4 (E.D. Cal. Mar. 10, 2020) ($400, $280 and $175 per hour for attorneys with undisclosed experience in a civil rights action following summary judgment); Prehired, LLC v. Provins, No. 22-00384, 2023 WL 4187461, at *4 (E.D. Cal. June 26, 2023) ($395 per hour for a litigator with 45 years' experience was on the low end of the range following successful motion to strike under California Code of Civil Procedure section 425.16, the "anti-SLAPP" statute); Olfati v. City of Sacramento, No. 21-00606, 2023 WL 2602227, at *2 (E.D. Cal. Mar. 22, 2023) ($400 per hour for litigating straightforward discovery dispute in civil rights action); Davis v. Mercedes-Benz USA, LLC, No. 21-0174, 2022 WL 16529527, at *2 (E.D. Cal. Oct. 28, 2022) ($175–$300 for attorneys with less than ten years' experience in an action under the Song-Beverly Consumer Warranty Act); Reynolds v. Singh, No. 22-00601, 2022 WL 3135895, at *4 (E.D. Cal. Aug. 5, 2022) ($450 for an experienced litigator litigating remand in personal injury suit); Cianchetta v. BMW of N. Am., LLC, No. 20-00241, 2022 WL 2160556, at *5-6 (E.D. Cal. June 15, 2022) ($225–$505 per hour based on one to eight years' experience in an action under the Song-Beverly Consumer Warranty Act); Quinonez v. FCA US, LLC, No. 19-02032, 2022 WL 2007429, at *2 (E.D.

Cal. June 6, 2022) ($500 for attorneys with more than 20 years' experience in an action under the Song-Beverly Consumer Warranty Act); Price Simms Holding, LLC v. Candle3, LLC, No. 18-1851, 2021 WL 1884995, at *2 (E.D. Cal. May 11, 2021), findings & recommendation adopted, 2021 WL 2016915 (E.D. Cal. May 20, 2021) ($450 per hour for experienced litigator after settlement in a contract dispute).

2024 WL 99847, at *3 (E.D. Cal. Jan. 9, 2024); see also Diaz v. United Parcel Service, Inc., No. 22-00246, 2023 WL 8622325, at *16-18 (E.D. Cal. Dec. 13, 2023) (summarizing reasonable hourly rates from fee awards in the Eastern District ranging from $175-$750 for attorneys and $75-$150 for paralegals).

It is Plaintiffs' burden to "justify the reasonableness of [their] requested rate[s]," by producing evidence that those rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895 n.11. In addition to the declarations submitted from Plaintiffs' own attorneys, Plaintiffs also provide declarations from attorneys Mark Merin and Dan Stormer in support of their proposed hourly rates. See ECF No. 186-4 ("Merin Decl.") and ECF No. 186-5 ("Stormer Decl."). Merin has extensive experience as an attorney, having practiced for approximately 57 years, as does Stormer, with 51 years as a lawyer. See Merin Decl. ¶¶ 2-32; Stomer Decl. ¶¶ 2-15. While Merin opines the rates requested by the Plaintiffs' attorneys and staff are reasonable "for attorneys performing work in Sacramento," Merin acknowledges that he was awarded $580 per hour in an Eastern District case, which the court considered an "'exceptional hourly rate," given the uniqueness of his experience. Merin Decl. ¶¶ 37-38, 52; see

9

also Stomer Decl. ¶ 21 ("I have reviewed the rates sought . . . . I am aware the rates requested follow a methodology . . . where the plaintiffs were awarded a rate based on the Laffey Matrix reduced by a percentage . . . . Although I have not personally used this approach, I can see that it is a conservative approach to calculating a prevailing rate in the Sacramento area."). Neither Stormer nor Merin provide any other insight or evidence relevant to the "the prevailing market rates" within this district; accordingly, the Court does not find them persuasive in setting reasonable rates for attorneys and paralegals in this case. Cf. Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1110-11 (9th Cir. 2014) ("Affidavits of the plaintiffs' attorneys and other attorneys regarding prevailing fees in the community ... are satisfactory evidence of the prevailing market rate") (citations, brackets, and quotations omitted).

The Court finds rates requested by Plaintiffs are inconsistent with reasonable rates within this district and Sacramento. Relying on the cases cited and summarized above, the Court finds $650 per hour to be reasonable for attorneys with 30 or more years' experience, $450 per hour for attorneys admitted to the bar between 2013-2014, $325 per hour for attorneys with 7-8 years' experience, $250 per hour for attorneys with 5-6 years' experience, $200 for attorneys with up to 3 years' experience, and between $75-125 per hour for paralegals and staff. These rates are consistent with other fee award hourly rates within this district, and the Court finds Plaintiffs have not provided any evidence supporting a variance

from these rates. Accord Terry, 2025 WL 406589, at *5 (E.D. Cal. Feb. 5, 2025) (awarding between $600-695 per hour to attorneys with at least 35 years' experience, $550-570 for attorneys with 18-26 years' experience, $400-535 for attorneys with more than 5 years' experience, $300-$400 for attorneys with less than 5 years' experience, and approximately $75-200 for law clerks and paralegals with up to 20 years' experience); Diaz, 2023 WL 8622325, at *17 (E.D. Cal. Dec. 13, 2023) (awarding $695 per hour for attorneys with 40 or more years' experience, $450 for an attorney with 14 years' experience, $300 for an attorney with 5 years' experience, and $100 for a paralegal); Goodson 2024 WL 99847, at *4 (E.D. Cal. Jan. 9, 2024) (awarding $650 per hour for lead counsel, an attorney with 44 years' experience, a "good reputation[,] and extensive relevant experience . . . ," $500 for the second-chair trial attorney, barred in 2011 after working in law enforcement for 20 years, and $400 for an attorney that graduated in 2003, but began his law practice in 2013); Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The district court may then adjust upward or downward based on a variety of factors.") (citing Hensley, 461 U.S. at 434). The Court finds an additional adjustment to these rates is unwarranted, since these rates are consistent with "the novelty and difficulty of the issues, the skill required to try the case, the experience held by counsel and fee awards in similar cases," and does not find the Kerr factors, or any other "variety of factors," merit an upward or downward change. See Moreno, 534 F.3d at 1111, 1114; Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975) (abrogated on other grounds by

11

City of Burlington v. Dague, 505 U.S. 557 (1992)); Mot. at 12-17.

With this framework, the Court turns to the rates requested for each individual attorney and staff member from Plaintiffs' legal team at the Lawyers' Committee for Civil Rights of the San Francisco Bay Area ("LCCRSF"), Sigel, Yee, Brunner & Mehta, and the Civil Rights Education and Enforcement Center, now Disability Law United ("CREEC/DLU"), applying its findings below.

### 1.    LCCRSF

Declarations were submitted from attorneys Nisha Kashyap, Marissa Hatton, and Andrew Ntim, in support of LCCRSF's request for attorneys' fees, fees for the work of a paralegal/law clerk, and costs.  ECF Nos. 186-8, Declaration of Nisha Kashyap ("Kashyap Decl."), 186-9, Declaration of Marissa Hatton ("Hatton Decl."), and 186-10, Declaration of Andrew Ntim ("Ntim Decl.").

#### a.    Nisha Kashyap

Kashyap was admitted to the California Bar in 2014, after graduating law school that year.  Kashyap Decl. ¶¶ 4-5. Beginning in 2018, Kashyap indicates she has worked on "several complex civil rights, economic justice, and consumer protection matters."  Id. at ¶ 8.  Kashyap attests that she entered her appearance in this case in February 2024 (id. at ¶ 11), but the Court notes according to the billing records submitted, she seeks fees for work beginning in November 2023.  See ECF 186-8, Exh. A, pg. 60.  Kashyap indicates she worked extensively on discovery, "supervised and second-chaired depositions taken or defended by [] Andrew Ntim," worked with expert witness Sarah

Butler, was the primary drafter of discovery-related briefing, edited summary judgment briefing, participated in settlement conferences, contributed to trial strategy, and worked on trial-related and settlement documents, among other things.  Kashyap Decl. ¶¶ 12-20.

Although Kashyap requests an hourly rate of $748.92 (Kashyap Decl. ¶¶ 21-26, 40), the Court finds an hourly rate of $450 is reasonable and consistent with the prevailing market rates in this district for the reasons detailed above.

### b.   Marissa Hatton

Hatton is a "Senior Staff Attorney in the Radical Justice Program" at LCCRSF.  Hatton Decl. ¶ 1.  She graduated law school and was admitted to the bar in 2017, and has been litigating "complex federal cases almost exclusively focused on *Monell* liability, police misconduct, and personal injury," for the past 8 years.  Id. ¶¶ 5-6.  Hatton entered her appearance in this case on September 30, 2024 (id. at ¶ 11), and according to the billing records submitted, she seeks fees for work at the start of that same month.  See ECF 186-8, Exh. A, pg. 109.  Hatton indicates she reviewed "over twenty deposition transcripts, hundreds of documents, and thousands of hours of body-worn camera [] footage," after joining the case.  Hatton Decl. ¶ 12. Hatton also worked on the opposition to defendant's motion for summary judgment, participated in settlement negotiations, conducted substantial trial preparation, and "served as the lead trial counsel for LCCRSF."  Id. ¶¶ 12-17.

Although Hatton requests an hourly rate of $662.81 (Kashyap Decl. ¶ 40), the Court finds an hourly rate of $325 is

13

reasonable and consistent with the prevailing market rates in this district for the reasons detailed above.

### c.  Zal Shroff

Shroff graduated from law school in 2017.  Kashyap Decl. ¶ 33.  Shroff's resume is provided as Exhibit E to Kashyap's Declaration, in support of the request for fees on his behalf. See id. and Exh. E.  There is no additional information in the declaration about Shroff's work in this matter, other than what is included in the billing records.  The hourly rate requested for Shroff is $425.02, since he last worked on the case in 2023 when he had approximately 6 years' experience.  Kashyap Decl. ¶ 33.  Consistent with the Court's findings above regarding prevailing market rates within this district, the Court finds an hourly rate of $250 is reasonable given Shroff's experience at the time he worked on this matter.

### d.  Lauren Carbajal

Carbajal graduated from law school in 2020.  Kashyap Decl. ¶ 35.  Carbajal's resume is provided as Exhibit F to Kashyap's Declaration, in support of the request for fees on her behalf. See id. and Exh. F.  There is no additional information in the declaration about Carbajal's work in this matter, other than what is included in the billing records.  The hourly rate requested for Carbajal is $326.27, since she last worked on the case in 2022 when she had approximately 2 years' experience. Kashyap Decl. ¶ 34-35.  Consistent with the Court's findings above regarding prevailing market rates within this district, the Court finds an hourly rate of $200 is reasonable given Carbajal's experience at the time she worked on this matter.

                    e.    Andrew Ntim

    Ntim graduated from law school and was admitted to the bar in 2022.  Ntim Decl. ¶ 2.  Ntim joined LCCRSF in 2023 as a fellow and entered his appearance in this case in September 2023.  Id. ¶¶ 4-5.  In this case, Ntim defended and conducted depositions, "led meet and confers," reviewed discovery to "draft internal proof charts," drafted and edited portions of briefs, and participated in settlement negotiations and the trial.  Id. ¶¶ 6-9.  Consistent with the Court's findings above regarding prevailing market rates within this district, the Court finds an hourly rate of $200 is reasonable given Ntim's experience at the time he worked on this matter.

                    f.    Neda Shahram

    Kashyap attests that Neda Shahram was a "Program Coordinator" for LCCRSF, most recently worked on this matter in 2023, and graduated from Lewis & Clark Law School in 2018.  Kashyap Decl. ¶¶ 36-37 and Exh. G.  There is no other information about Shahram's work on this matter or role at LCCRSF, other than what is included in the billing records, but Shahram's resume indicates she is a "[p]rofessional legal assistant."  Id., Exh. G.  In Plaintiffs' motion, they indicate Shahram was working as "a law clerk" for LCCRSF, citing paragraph 37 of Kashyap's declaration for support.  Mot. at 23.  However, this information is absent from Kashyap's declaration.  Cf. Kashyap Decl. ¶¶ 36-37 ("Exhibit A includes hours spent on this litigation recorded by Neda Shahram, Hadley Rood, and Khrystan Policarpio, former legal support staff at LCCRSF.  Ms. Shahram worked for LCCRSF as a Program Coordinator . . . .

                    15

Attached to this declaration as Exhibit G is a true and correct copy of the résumé LCCRSF keeps on file for Ms. Shahram. She is a 2018 graduate of Lewis & Clark Law School and most recently worked on this case in July 2023.")

It is unclear whether Shahram was a program coordinator, law clerk, or legal assistant, and it is Plaintiffs' burden to justify their requested rate, $188.81 an hour, supported by evidence. See Blum, 465 U.S. at 895 n.11; Mot. at 23. Given the conflicting and unclear evidence and information before the Court, the Court finds an hourly rate of $75 is reasonable for Shahram. See Diaz, 2023 WL 8622325, at *17 (E.D. Cal. Dec. 13, 2023) (citing other cases supporting a reduction in a requested rate, including down to $75 an hour, when plaintiffs failed to provide information about staffs' experience).

### 2. Siegel, Yee, Brunner & Mehta

Attorneys EmilyRose Johns and Sara Beladi and paralegal Kayla Jerome submitted declarations in support of law firm Siegel, Yee, Brunner & Mehta's request for fees and costs. ECF Nos. 186-1, Declaration of EmilyRose Johns ("Johns Decl."), 186-2, Declaration of Sara Beladi ("Beladi Decl."), and 186-3, Declaration of Kayla Jerome ("Jerome Decl.").

#### a. Dan Siegel

EmilyRose Johns primarily provided information about Mr. Siegel, supplemented by Mark Merin and Dan Stormer, as Mr. Siegel passed away in July 2025. Johns Decl. ¶ 36; Merin Decl. ¶¶ 39-42; Stomer Decl. ¶¶ 19. Sigel began his legal career in 1970. Johns Decl. ¶ 40. His experience included work in the public and private sector, though primarily at Siegel, Yee,

16

Brunner & Mehta.  Id. ¶ 42-45.  Siegel's "practice emphasized employment, civil rights, and labor matters;" he completed more than 130 jury trials and argued approximately 40 appellate matters in state and federal court.  Id. ¶ 45.  Siegel also taught at Golden Gate University School of Law and the School of Education at Mills College, served as a judicial arbitrator in Alameda County, and was recognized by a number of publications for his work.  Id. ¶ 46.

In this case, Siegel supervised discovery tasks, supervised junior attorneys defending depositions, led settlement discussions and meet and confer efforts, took 3 30(b)(6) depositions and defendant Hahn's deposition, and "provided extensive guidance on trial strategy and trial preparation." Johns Decl. ¶ 49.  Though the requested hourly rate for Siegel is $901.39 (Johns Decl. ¶ 51), the Court finds an hourly rate of $650 is reasonable.

                    b.    EmilyRose Johns

Johns was admitted to the California Bar in 2013, after graduating law school that year.  Johns Decl. ¶ 5.  Johns has worked at Siegel, Yee, Brunner & Mehta since 2015, where she "handle[s] many fact-filled, lengthy, and complicated prison and police-misconduct litigation cases."  Id. ¶¶ 6-7.  At the firm, Johns is a senior associate, has first and second-chaired trials, and settled "a substantial number of cases arising from [] police officer or correctional officer misconduct."  Id. ¶¶ 8-16.  Johns entered her appearance in this case in June 2022 (id. at ¶ 17), but she seeks fees for work beginning in May 2022 according to the billing records submitted.  See ECF 186-1, Exh.

A, pg. 1.  Johns attests she took 4 30(b)(6) depositions, 2 witness depositions, defended 2 plaintiff depositions, worked on discovery, and took a leadership role in trial preparation. Johns Decl. ¶¶ 23, 26.

While Johns requests an hourly rate of $748.92 (Johns Decl. ¶ 33), the Court finds an hourly rate of $450 is reasonable.

### c.    Sara Beladi

Beladi graduated from law school in 2021, then sat for and passed the bar exam in 2022.  Beladi Decl. ¶ 3.  Beladi was admitted to practice in March 2023.  Id. ¶ 4.  Beladi attests in this case she worked on written discovery, "spent a significant amount of time reviewing defendants' document production," and prepared 2 witnesses for trial.  Id. ¶ 8.

Although Beladi represents that "[a]t the time of the litigation here, [she] was an associate attorney" and requests an hourly rate of $373.67, there are several billing entries from 2022, before her admission to practice.  Id. ¶ 6; ECF 186-2, Exh. A.  Accordingly, for Beladi's work before her admission to practice in March 2023, the Court finds an hourly rate of $125 is reasonable, equivalent to a rate for the work of a certified law student or law clerk in the Eastern District. After Beladi's bar admission, the Court finds an hourly rate of $200 is reasonable.

### d.    Kayla Jerome

Jerome received her bachelor's degree in criminal justice and began working as a paralegal in 2018, before joining Siegel, Yee, Brunner & Mehta in 2021.  Jerome Decl. ¶ 2.  Jerome attests she worked on discovery in this matter, including reviewing and

18

indexing documents, identified trial exhibits, and provided trial support, among other things.  Id. ¶ 3-4.  While Jerome requests an hourly rate of $203.82, the Court finds an hourly rate of $125 is reasonable.

### 3.   CREEC/DLU

Attorney Cynthia Rice submitted a declaration in support of CREEC/Disability Law United's request for attorneys' fees, fees for the work of several paralegals, and costs.  ECF No. 186-6, Declaration of Cynthia Rice ("Rice Decl.").  Paralegal Ana Diaz also submitted a declaration in support of their request for fees.  ECF No. 186-7, Declaration of Ana Diaz ("Diaz Decl.").

### a.   Cynthia Rice

Rice was admitted to the California bar in 1979.  Rice Decl. ¶ 2.  Rice "specialized in Civil Rights litigation" throughout her career, working as an attorney, managing attorney, and director in several nonprofit organizations, and also in private practice.  Id. ¶ 3-4.  Rice has been the Legal Director for Disability Law United/CREEC since 2023.  Id. ¶ 3.

In this case, Rice was "actively involved in the strategic planning of the case," responsible for 3 30(b)(6) depositions, defended 2 Plaintiffs' depositions, reviewed and edited pleadings, drafted some discovery, and was involved in trial preparation.  Id. ¶ 17-18.  Though the requested hourly rate for Rice is $901.39 (id. ¶ 22), the Court finds an hourly rate of $650 is reasonable.

### b.   Elizabeth Ballart

Ballart graduated from law school in 2014.  Rice Decl. ¶ 26.  Ballart's resume is provided as Exhibit F to Rice's

Declaration, in support of the request for fees on her behalf. See Rice Decl. ¶ 26 and Exh. F.  There is no additional information in the declaration about Ballart's work in this matter, other than what is included in the billing records.  The hourly rate requested for Ballart is $534.04, since she last worked on the case in 2022 when she had approximately 8 years' experience.  Rice Decl. ¶ 26.  Consistent with the Court's findings above regarding prevailing market rates within this district, the Court finds an hourly rate of $325 is reasonable given Ballart's experience at the time she worked on this matter.

c.    Aviance Brown

Brown graduated from law school in 2018.  Rice Decl. ¶ 23. Brown's resume is provided as Exhibit C to Rice's Declaration, in support of the request for fees on her behalf.  See id. and Exh. C.  According to Rice, Brown had "primary responsibility for discovery, motions and trial preparations for issues related to use of less lethal force," on behalf of CREEC, including working with expert Maguire.  Rice Decl. ¶ 19.  Brown also attended depositions "on behalf of CREEC/DLU" and was "heavily involved in settlement negotiations, [and] pre-trial witness and expert preparation [] prior to the damages settlement."  Id.

Although the requested hourly rate for Brown is $458.99 (id. ¶ 22), the Court finds an hourly rate of $325 is reasonable.

d.    Pilar Gonzalez Morales

Rice attests that Morales graduated from law school in 2016, however, the hourly rate requested for Morales reflects

20

her approximately 6 years' experience when she worked on this matter, according to Rice's Declaration.  Rice Decl. ¶ 24. Morales' resume is provided as Exhibit D to Rice's Declaration, in support of the request for fees on her behalf.  Id. ¶ 24 and Exh. D.  There is no additional information in the declaration about Morales's work in this matter, other than what is included in the billing records.  The hourly rate requested by CREEC for Morales is $450.31, since she last worked on the case in 2022 when she had approximately 6 years' experience.  Rice Decl. ¶ 24.

Morales' experience and bar admission is not clear to the Court.  Morales' resume indicates she graduated from law school in 2010, but her resume does not show when she was admitted to the bar.  See Exh. D.  In Plaintiffs' fee motion, they list Morales' graduate year/experience as 2022 and request an hourly rate of $369.72.  Mot. at 3.  Plaintiffs bear the burden of establishing a reasonable fee and from the information in Rice's declaration and Exhibit D, CREEC appears to request an hourly rate for an attorney with 6 years' experience.  See Rice Decl. ¶ 24.  Given the information before the Court, the Court finds an hourly rate of $250 is reasonable given the request that Morales' hourly fee should be equivalent to someone with 6 years' experience, consistent with the prevailing market rate as discussed above.

                    e.    Ana Diaz, Sassia Morris & Mikhal Kidane

Rice requests an hourly rate of $164.32 for paralegals Morris, Diaz, and Kidane.  Rice Decl. ¶ 28-29, 31.

According to Diaz, she was employed as a paralegal with

CREEC beginning in 2018. Diaz Decl. ¶ 3. Since then, she has been promoted to lead paralegal/office manager, then director of operations. Id. Given Diaz's experience as a paralegal and office professional, the Court finds $125 is a reasonable hourly rate, consistent with the prevailing market rate as discussed above.

There is no additional information provided regarding paralegals Morris and Kidane's experience or work on the case, other than what is included in the billing records provided by Plaintiffs. See Rice Decl. Consistent with the court's findings in Diaz, the Court finds $75 is a reasonable hourly rate for a paralegal without any further information about their background and experience. See Diaz, 2023 WL 8622325, at *17 (E.D. Cal. Dec. 13, 2023) ("The rate for Paralegal Carcione shall be adjusted to $100. [] Englert v. City of Merced, [No. 18-cv-01239], 2020 WL 2215749, at *13 [(E.D. Cal. May 7, 2020)] (rejecting the requested rates of $125 to $150 per hour for the paralegals and reducing them to $75 when the plaintiffs "provided no information on the experience of the paralegals"); Freshko Produce Servs. v. Write on Mktg., No. 1:18-cv-01703[], 2019 WL 37898491, at *3 (E.D. Cal. Aug. 13, 2019) (finding the proposed hourly rate of $150 was not reasonable because counsel "fail[ed] to identify the education and experience of [the] paralegal to justify the upper rate of $150," and adjusting the hourly rate to $100)).

4.    Other attorneys and staff

Consistent with the Plaintiffs' reply, the Court has removed from the lodestar, attorneys and staff that did "de minimis" work

22

on this matter.  Reply at 13.  This removes approximately 66.6 hours logged by 5 attorneys, as well as 7.7 hours of paralegal work, and is consistent with the Court's finding below regarding an extraordinary number of unnecessary, duplicative, excessive billing entries.  Accordingly, the Court does not include Tifanei Ressl-Moyer, Khrystan Policarpio, Haley Rood, Amy Robertson, Marie Lafferty, and Yashna Eswaran in its analysis of appropriate hourly rates, above.

        C.    Hours Worked

        Continuing with the lodestar method, the Court "must determine a reasonable number of hours for which the prevailing party should be compensated."  Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013).  "Ultimately, a reasonable number of hours equals the number of hours which could reasonably have been billed to a private client.  The prevailing party has the burden of submitting billing records to establish that the number of hours it has requested are reasonable."  Id. (citing and quoting Moreno, 534 F.3d at 1111 and In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1305 (9th Cir.1994)) (internal quotations and citations omitted).  The Court must exclude "hours that were not 'reasonably expended,'" which include overstaffing, and "hours that are excessive, redundant, or otherwise unnecessary . . . ."  Hensley, 461 U.S. at 434 (noting the same ethical obligations apply as in private practice to exclude these hours from a client's bill); see also McCown, 565 F.3d at 1102.  It is also well established that ""purely clerical or secretarial tasks should not be billed at a paralegal or [lawyer's] rate, regardless of who performs them."

See Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989).  This includes downloading, saving, and forwarding documents, calendaring, and filing.  See Diaz, 2023 WL 8622325, at *15 (E.D. Cal. Dec. 13, 2023).

Plaintiffs argue the more than 2.5 million dollars in fees they seek are reasonable, given "the complexity of the case" and "multiple firms assign[ing] multiple staff to th[is] case." Mot. at 18.  Plaintiffs' counsel attest they have reviewed the billing records submitted to eliminate duplication, clerical tasks, and hours related to unsuccessful claims or abandoned issues, and also claim the billing entries are "reasonable and reflect[] time that would normally be billed to a client who paid on an hourly basis."  Id.; see also Rice Decl. ¶ 10; Kashyap Decl. ¶¶ 41-42 ("I personally reviewed the hours . . . for appropriateness and accuracy," and eliminated duplicative time).  Defendants counter that the fee request here is "profoundly unreasonable" and excessive, arguing an across the board 75% reduction is warranted.  Opp'n at 19-21.

As a starting point, this case was consistently staffed with 7 to 9 attorneys, including 2 senior partners, each with more than 45 years' experience, 2 or more senior associates with more than 10 years' experience, a number of mid-level and junior attorneys, and typically 4 paralegals and staff.  There is nothing in Plaintiffs' motion or the supporting declarations that explains why this case required such extraordinary staffing and effort.  The Court has reviewed in detail the submitted Plaintiffs' attorneys' billing records and discovered extensive duplication and an extreme number of excessive or unnecessary

hours logged by attorneys and staff.  For each organization or firm, the Court has denied reimbursement for the vast majority of time entries that were determined to be unreasonable, unnecessary, duplicative and improper as a matter of law. Examples of some of the more egregious time entries are discussed in more detail below.  Justified reductions to paralegal and staff billing, and additional reductions based on significant duplication between CREEC, LCCRSF and the Siegel firm and for the Plaintiffs' limited success are also detailed below.[2]

### 1.   Litigation Team Meetings

The extensive billing for weekly meetings exemplifies the unnecessary and excessive hours included in Plaintiffs' fee request.  Throughout this case, Plaintiffs conducted weekly team meetings, though sometimes these meetings were held more frequently.  These meetings often included 6 to 7 or more attorneys, including several senior partners and associates, mid-level and junior associates, as well as typically 3 to 4 paralegals or staff.  At Plaintiffs' requested rates, these weekly meetings totaled approximately $5,500, or the equivalent of $285,000 a year.  Even at the Court's reduced hourly rates, a conservative estimate for just the lawyers' attendance at these meetings cost approximately $4,800 each, or nearly $250,000 a year, and span the duration of a case that was litigated for years.  Although there is a representation that "[t]hese

---

[2] The Court has also stricken billing entries for Tifanei Ressl-Moyer, Khrystan Policarpio, Haley Rood, Amy Robertson, Marie Lafferty, and Yashna Eswaran, consistent with its findings, above in section A.4.

25

meetings were critical components of the case development. Strategy was discussed, discovery, motion and trial plans were developed, discrete tasks were assigned and reported back on" (Rice Decl. ¶ 17), Plaintiffs otherwise make no attempt to explain or justify these expenses.  It is unreasonable to find that a private client would pay 6 to 7 or more lawyers nearly $20,000 a month to conduct weekly meetings to discuss case strategy and distribution of work in the case.  Plaintiffs have failed to demonstrate the reasonableness of these billing entries, and accordingly, entries for team meetings have been removed from Plaintiffs' requested fees.  The Court notes it has not eliminated all inter-office conferencing, meetings, or calls with clients, recognizing there is some amount of collaboration needed.  However, having presided over the litigation and trial in this matter, the Court finds that the litigation and trial was not particularly novel, complex, or unique and did not warrant staffing at the levels utilized by Plaintiffs or require repetitive weekly meetings.  Accord Diaz, 2023 WL 8622325 at *16 (E.D. Cal. Dec. 13, 2023) ("However, counsel should not bill for attending the same meetings, internal communications, and communicating with each other, as such time is unnecessary.") (citing Robinson v. Plourde, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010); Gauchat-Hargis v. Forest River, Inc., No. 2:11-cv-02737-KJM-EFB, 2013 WL 4828594, at *3 (E.D. Cal. Sep. 9, 2013)).

2.   Reductions to CREEC's Fees

The Court now turns to categories of fees that have been removed from Plaintiffs' requested hours and will not be awarded, starting with CREEC's requested fees.

a. Database Building and Compiling Data to Share Across Teams

CREEC billed for what appears to be the creation or revision of a database, "Airtable," and for exploring other document management systems.  This includes entries in 2021 like: "Revised Sacramento Evidence database on Airtable," (6/2), "Short call with LCCRSF volunteer … discussing questions on the Airtable database and evidence entry in addition to community fact gathering project," (7/26), "MTW M. Kindane re: database for tracking evidence we're gathering," (May 18), "Call with Sacramento team to discuss timeline and division of tasks for the evidence database" (6/7), "Developed new Bates numbering system and started renaming social media evidence to be included in Airtable evidence database in newly created Evidence table" (6/8), "Revised Community Fact Gathering Survey questions . . . and included them in a Form on Airtable; edited Form" (7/28), "Created a table to track client information to eventually be [sic]" (9/13); and in 2022 like: "Reviewed evidence in Airtable for Bates stamping" (8/8), 22 entries related to whether CREEC should use and contract with Everlaw, "Call with DISCO for potential use of their program for document management" (6/1), "Email with N. Shahram re: CDISCO costs and case management software" (6/22), and other emails and calls throughout 2022 regarding document management systems like Relativity and DISCO, including 2 attorneys billing for participating in a DISCO database training on August 9.  The Court has eliminated these categories of entries; there was no explanation or justification by Plaintiffs for the need for the entries.  The Court finds they

are unreasonable, especially because a private client would not pay for these types of fees.

### b. Attempts to Recruit Additional Plaintiffs and Attorneys

CREEC also billed to recruit other attorneys or firms to work on this matter, as well as finding additional plaintiffs. The Court finds it is unreasonable to assume that a private client would pay these fees and "a lawyer in private practice [would be] ethically [] obligated to exclude such hours from his fee submission." See Hensley, 461 U.S. at 434. The Court has stricken these types of entries throughout CREEC's billing, which include line items like "Working on assembling package for potential co counsel" (5/20/21), "Go through Mayor Steinberg Twitter" (4/22/21), "Emails re: potential co-counsel with Wilson Solsini and call" (8/18/21), "Attended meeting to strategize for upcoming meeting with potential co-counsel; attended meeting with Wilson and Sonsini to try to bring them onto the Sacramento Case" (8/20/21), "Attached [] electronic signature to the co-counsel agreement …; sent signed agreement to [] LCCRSF" (9/14/21), "Call with LCCRSF re: co-counsel" (1/12/22), and "Review co-counsel agreement for CREEC's obligations" (9/19/22).

### c. Block Billing and Vague or Incomplete Entries

The Court has also eliminated vague and incomplete entries, as Plaintiffs have failed to meet their burden demonstrating these are reasonable expenses. Some of the eliminated entries include: "Completed 'Client as Potential Plaintiff Interview Memo' for XX" (2.1 hours, 9/16/21), "Call with TRM" (10/14/21), "Reviewing FAC claims" (1.5 hours on 2/3/22), "Prep call with

28

Elizabeth" (7/21/22), "Call with Tifanei and Elizabeth" (7/21/22), "Letter Proof (Reading)" (8/15/22), "Case planning" (1.2 hours on 8/19/22), "Reviewed electronic files" (4/12/23), "File rev and prep" (8/3/23), "Discovery review" (4/15 & 4/18/24), "Review" (12/18/24), "Updates" (12/23/24), and 5.3 hours for "Continued adding to draft amended complaint specifically" (12/3/21).

Similarly, the Court has reduced a number of unspecific block billed hours, like: Morales billing 6.8 hours on November 18, 6 hours on November 19, and 7 hours on November 22, 2021 for "working on complaint," after billing 6 hours on November 3 for "reviewing and providing input to Wilson Sonsini's first draft of complaint."  See Gonzalez, 729 F.3d 1196, 1203 (citing other precedent affirming elimination of block billing).

### d.   Entries Re: Outside Counsel's Expertise

Plaintiffs' attorneys have also failed to demonstrate entries related to consultation with other attorneys or firms, despite the extensive experience they cited, that could justifiably be billed to a private client.  (For example, "Call with 1st amendment litigator to discuss 1st amendment burden of proof issues.")  Accordingly, the Court removed these types of entries from the billing records.

### e.   Media and Advocacy

The Court has also eliminated CREEC's entries related to use of the media, including social media, to promote their work on this case, as well as entries related to advocacy within Sacramento, as the Court finds this could not be reasonably or ethically funded by a private client.  Hensley, 461 U.S. at 434.

29

These entries include: "Emails and communications re: media and plan for contacting named Ps" (1 hour on 12/1/21), "Emails and communications re: public event around complaint filing" (1 hour on 12/2/21), "Drafting and sending talking points for media" (.5 hour on 12/10), "Emails re: talking points" (12/13), "Emailed Sam re: input from clients on media outreach" (12/15), "Review of talking points and last minute prep for press conference, discussions with team before and after" (1/4/22), "Call with named P's re: community engagement and events" (1/12/22), and in June 2022, 1.5 hours for "Draft and edit press release re: order on MtD", "Discussed upcoming posts to celebrate decision on motions to dismiss and social media more generally," and "Reviewing and providing feedback re: social media posts."  Other eliminated entries include, "Meg White Op Ed piece" (2/28/24), "Discussion with plaintiff and CBS representative re: potential for media story to highlight the lawsuit" (4/4/24), "Meeting with CBS reporter re: putting together a story for protesters rights in California in the wake of national" and "Telephone conference prep with Meg prior to call with CBS report" (5/6/24), "Press release re MSJ and trial" (1/22/25), "Community organizing meeting" (1/20/22), "Reviewed first draft of advocacy letter to City Council regarding weapons of war and provided Madeline with edits/next steps" (7/19/22), "Researching the proposed policies on weapons of war to prepare advocacy letter to city council" (also 7/19/22), numerous entries related to receiving and reviewing an ACLU letter to city council regarding military weapons (9/7/22), "Review Sacramento 2023-24 budget to assess identified policing priorities and to determine whether they have

made any attempts to incorporate our original demands re: shifting in budgeting, policy amendments etc." (2/12/24), "Review OPSA quarterly reports to assess actions taken by the committee in response to community" (2/19/24), and "Review notes from debrief of client meeting with counsel member Valenzuela" (5/22/24).

### f.   Billing for Clerical Tasks

Numerous clerical and secretarial tasks were eliminated from CREEC's billing, despite it being well established these tasks should not be billed at a lawyers' rate.  See Jenkins, 491 U.S. 274.  These included: "Organizing of internal documents folders" (2 hours on 7/22/22), "Writing proposal for re-organizing documents folder" (8/30/22), "Bates stamp and save documents from Defendants' Discovery production to CREEC and LCCRSF sharepoints; create document tracker on Bates stamped documents and documents that need to be Bates stamped; review ingest tracking document from LCCRSF" (8/30/22), "Received & downloaded filed notice of change of address" (10/10/24), "Confirmation and calendaring of depositions" (10/12/23), "Exchanging emails to reschedule co-counsel call" (10/1/21), "Email correspondence to expert witness re: payment of invoice for deposition" (1/6/25), "filing Plaintiffs' objections to Defendants' Exhibits" and "final formatting, [] and saving in pdf" (3/1/25), and 3.8 hours for "Exhibit copies" (7/18/24).

### g.   Entries Counsel Represented Were Removed From Billing

Attorney Rice attested that entries were eliminated from Plaintiffs' fee request related to an abandoned claim regarding drones.  Rice Decl. ¶ 12.  However, the Court found and struck

31

numerous entries that were not removed by Rice, including 14 entries related to drones, like: "Research current search and seizure law as related to surveillance, generally and drone surveillance" (4/7/23), "Draft requests for production re drone logs. collect factual background on drone licensure, certification and rules for depos. reach out to EFF for leads on experts on drone use" (5/26/23), "Call from Dave Maass, Electronic Frontier Foundation re: Expert on Drones" (5/30/23), "Drone Practices Investigation" (6/9/23), and "Review of drone information in SAC PD public information channel which only goes back to 2022. Contrasted published info from other sources reporting drone use back to 2019" (11/13/23).

Similarly, Plaintiffs recovered fees for discovery litigation (see ECF 83), and despite representing these entries were eliminated from their requested fees, the Court found a number of entries still contained in their billing records, including: "Brief rule 26 research on determining appropriate next steps in responding to Def's lack of timely disclosure re: expert witness report" (8/19/24), "Email correspondence to co-counsel team re: concerns for M&C with OC prior to filing motion to exclude expert report" (8/28/24), "Review and respond to email correspondence from cocounsel re: updates from MTE hearing," "Motion to compel fees" (10/24/24), and "Emails with co counsel re fees on motion to compel" (12/17/24).

### 3.    Reductions to LCCRSF's Fees

The Court found extensive, repeated entries in LCCRSF's billing records.  The Court is unable to discern if they are erroneous or understand why there may be as many as 18 or more

different entries with the same billing text.  LCCRSF does not provide any explanation for this in their motion, nor in their supporting declarations.  It appears to the Court that the billing documents submitted may have not been audited, despite counsel attesting that was done.  As detailed more below, the Court has eliminated these as excessive, redundant, and unnecessary.  See Hensley, 461 U.S. at 434.

                a.    Duplicative and Possibly Erroneous Entries

Attorney Carbajal seeks fees for a significant number of back-to-back, identical entries for tasks like "Creating schedule/plan for interview coding" (3 entries on 8/4/21), "Coding AH interviews into Airtable for drafting fact section of complaint" (8 entries on 8/5/21), and "Coding DZG interviews into Airtable for drafting fact section of complaint" (4 entries on 8/6/21).  This continues throughout LCCRSF's billing.  Several examples are included below:

| Date | Name | Category | Description | Hours | Rate | | Amount |
|---|---|---|---|---|---|---|---|
| 4/6/22 | Lauren Carbajal | Pleadings | Prepping hearing outlines - shotgun pleadings | 0.9 | $ 326.27 | $ | 293.64 |
| 4/6/22 | Lauren Carbajal | Pleadings | Prepping hearing outlines - shotgun pleadings | 0.9 | $ 326.27 | $ | 293.64 |

| Date | Name | Category | Description | Hours | Rate | | Amount |
|---|---|---|---|---|---|---|---|
| 6/14/22 | Lauren Carbajal | Discovery | Reviewing PRA responses for conspiracy count | 1.2 | $ 326.27 | $ | 391.52 |
| 6/14/22 | Lauren Carbajal | Discovery | Reviewing PRA responses for conspiracy count | 0.1 | $ 326.27 | $ | 32.63 |
| 6/14/22 | Lauren Carbajal | Discovery | Reviewing PRA responses for conspiracy count | 0.8 | $ 326.27 | $ | 261.02 |
| 6/14/22 | Lauren Carbajal | Discovery | Reviewing PRA responses for conspiracy count | 0.7 | $ 326.27 | $ | 228.39 |
| 6/14/22 | Lauren Carbajal | Discovery | Reviewing PRA responses for conspiracy count | 0.1 | $ 326.27 | $ | 32.63 |
| 6/15/22 | Lauren Carbajal | Discovery | Reviewing PRA responses for conspiracy count | 0.1 | $ 326.27 | $ | 32.63 |
| 6/15/22 | Lauren Carbajal | Discovery | Reviewing PRA responses for conspiracy count | 0.3 | $ 326.27 | $ | 97.88 |
| 6/15/22 | Lauren Carbajal | Discovery | Reviewing PRA responses for conspiracy count | 0.6 | $ 326.27 | $ | 195.76 |

| Date | Name | Category | Description | Hours | Rate | | Total | |
|---|---|---|---|---|---|---|---|---|
| 6/15/22 | Lauren Carbajal | Discovery | Reviewing PRA responses for conspiracy count | 0.1 | $ | 326.27 | $ | 32.63 |
| 6/15/22 | Lauren Carbajal | Discovery | Reviewing PRA responses for conspiracy count | 0.1 | $ | 326.27 | $ | 32.63 |
| 6/15/22 | Lauren Carbajal | Discovery | Reviewing PRA responses for conspiracy count | 0.2 | $ | 326.27 | $ | 65.25 |
| 6/15/22 | Lauren Carbajal | Discovery | Reviewing PRA responses for conspiracy count | 0.1 | $ | 326.27 | $ | 32.63 |
| 6/15/22 | Lauren Carbajal | Discovery | Reviewing PRA responses for conspiracy count | 0.2 | $ | 326.27 | $ | 65.25 |
| 6/15/22 | Lauren Carbajal | Discovery | Reviewing PRA responses for conspiracy count | 0.2 | $ | 326.27 | $ | 65.25 |
| 6/15/22 | Lauren Carbajal | Discovery | Reviewing PRA responses for conspiracy count | 1.1 | $ | 326.27 | $ | 358.90 |

| Date | Name | Category | Description | Hours | Rate | | Total | |
|---|---|---|---|---|---|---|---|---|
| 6/28/22 | Lauren Carbajal | Pleadings | Amending conspiracy claim | 0.6 | $ | 326.27 | $ | 195.76 |
| 6/28/22 | Lauren Carbajal | Pleadings | Amending conspiracy claim | 0.6 | $ | 326.27 | $ | 195.76 |
| 6/28/22 | Lauren Carbajal | Pleadings | Amending conspiracy claim | 0.2 | $ | 326.27 | $ | 65.25 |
| 6/28/22 | Lauren Carbajal | Pleadings | Amending conspiracy claim | 0.2 | $ | 326.27 | $ | 65.25 |

| Date | Name | Category | Description | Hours | Rate | | Total | |
|---|---|---|---|---|---|---|---|---|
| | | | re rog deficiencies | | | | | |
| 9/29/23 | Andrew Ntim | Discovery | Meet and Confer with City on RFP 2, plus follow up debrief | 2.0 | $ | 373.67 | $ | 747.34 |
| 9/29/23 | Andrew Ntim | Discovery | meet and confer on RFP 2 and interrogatories including debrief after | 1.5 | $ | 373.67 | $ | 560.51 |

Other examples include 5 entries for "Editing NS draft of PRA request" on 10/1/21, 6 entries for "Research on effects of small claims actions on larger lawsuits" on 10/5/21, 4 entries of for "Reading Portland case and research in anticipating of complaint", 8 entries (7 back-to-back) for "Addressing PG comments + following up with witnesses" 8 entries, 7 back to back on 12/19/21, 2 more on 12/20/21, and 7 more on 12/21/21, in billing, 15 entries over 2 days for "Amending conspiracy claim" between 6/28 and 6/29/22, and in May 2023, 3 entries for "Internal litigation team meeting re strategy, upcoming tasks and division of labor."

34

The Court has also eliminated what appear to be excessive inter-office conferencing and duplication of work.  Below are examples from July 2023:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/10/23 | Zal Shroff | Co-Counsel Meetings and Communications | Discussion about PRA litigation and how it overlaps with discovery in the action | 1.0 | $ 425.02 | $ | 425.02 |
| 7/10/23 | Zal Shroff | Co-Counsel Meetings and Communications | Sacramento Litigation Team | 1.0 | $ 425.02 | $ | 425.02 |
| 7/10/23 | Zal Shroff | Co-Counsel Meetings and Communications | Internal litigation team meeting re strategy, upcoming tasks and division of labor | 0.5 | $ 425.02 | $ | 212.51 |
| 7/10/23 | Zal Shroff | Co-Counsel Meetings and Communications | Preparation of proposed deadline and task list for litigation | 0.2 | $ 425.02 | $ | 85.00 |
| 7/11/23 | Zal Shroff | Co-Counsel Meetings and Communications | Case planning meeting to discuss all claims, etc. | 2.0 | $ 425.02 | $ | 850.04 |
| 7/14/23 | Zal Shroff | Co-Counsel Meetings and Communications | Discussion re propounding additional interrogatories | 0.3 | $ 425.02 | $ | 127.51 |
| 7/17/23 | Zal Shroff | Co-Counsel Meetings and Communications | Sacramento Litigation Team | 1.0 | $ 425.02 | $ | 425.02 |
| 7/17/23 | Zal Shroff | Co-Counsel Meetings and Communications | Internal litigation team meeting re strategy, upcoming tasks and division of labor | 0.5 | $ 425.02 | $ | 212.51 |

In August 2024, Kashyap and Ntim had billing entries for reviewing expert report(s), and 3 attorneys billed for reviewing what appears to be the same discovery in September 2024. Similarly, on September 28, Hatton billed for reviewing defendant's motion for summary judgment, then on September 30, Kashyap billed for the same work.  Additionally, 3 attorneys billed for work on the joint pretrial statement, despite at least 4 other lawyers from CREEC and the Siegel firm also working on it.

b.    Database Building and Recruiting

Like CREEC, LCCRSF also seeks reimbursement for

35

impermissible billing for database building, as well as attempts to recruit other plaintiffs and lawyers to work on this case. For the same reasons, the Court has not included entries related to Airtable and other discovery databases or tools, as well as entries related to recruitment in the final attorneys fee award. (See, for example, 3 separate entries on 8/30/21 for "Creating table for organizational outreach", "Strategy meeting to talk about interviews and prospective additional clients" (9/8/21), "Creating spreadsheet for client outreach plan and scheduling interviews" (9/9/21), and "Reading and taking notes on LCCRSF engagement letter").

### c. Vague, Erroneous, Questionable and Excessive Entries

As with CREEC's billing records, LCCRSF includes a number of entries that are difficult to decipher, excessive, and possibly erroneous. The Court has likewise eliminated entries that are not reasonable and that Plaintiffs have failed to justify a private client subsidizing. Some examples include 3.8 hours on 9/7/21 between 3 entries for "Re-organizing + retrieving client information," "Thoughts on written discovery as interacting with settlement" (9/8/23), "Correspondence with Kate on discovery date" (1/30/24), "Weekly all racial justice staff meeting, discussing ongoing sacramento projects including doc review" (6/7/24), 25 separate entries over 2 days for "Review interviews and begin drafting facts section" (12/6-12/8/21), 2 back-to-back entries for "Reviewing work from last two days and strategizing for fact gathering" (12/8/21), 18 entries for "Drafting facts section of complaint" over 3 days, but primarily on 12/14 and

12/15/21, "Meeting with ZS on long term advocacy goals for sacramento case" (1/22/24), "Weekly meeting with NK on ongoing sacramento projects" (1/23/24), entries for "early initial research into epc [and privacy] claim[s]" in January 2024 despite repeated billing previously on research and memos on this same issue, "Check in with zal on deposition and other ongoing sacramento issues" (2/14/24), multiple deposition moots (4/12-4/15/24), "Drafting agenda for meeting with nisha re sac and summarizing ongoing projects" (5/30/24), and, after more than 50 entries related to drafting the complaint, multiple entries for "Reviewing complaint to plan for declarations" and 5 entries for "drafting email for declaration planning" in January 2022.

Also of concern is an entry from Ntim on September 28, 2023, for "Attending Lt. Kaneyuki Deposition; take notes for LCCR." That same day, CREEC attorney Rice bills for "[E]mails and texts re cancellation of Kaneyuki deposition," and it appears from the other billing records that deposition actually occurred in March 2024.

### d.   Media and Advocacy

Like CREEC, LCCRSF also seeks reimbursement for impermissible billing for media and advocacy.  Some examples include: "Meeting with team and SL about media" (12/20/21), "Sacramento Community Event Planning Meeting" (1/12/22), and "Follow up research on political & media targets after meeting with Meg" (1/26/24).  For the same reasons detailed above, the Court has not included these types of entries in the attorneys' fees award.

///

### e.    Billing for Clerical Tasks

As with CREEC's billing, numerous clerical and secretarial tasks were eliminated from LCCRSF's billing, despite it being well established these tasks should not be billed at a lawyers' rate.  See Jenkins, 491 U.S. 274.  These included: "Filing and documenting plaintiff files" (4/4/22), "Gathering 30b6 transcripts to review" (1/8/24), "Correspondence confirming deposition dates with all clients & setting calendar invitations" (1/9/24), "Collecting client contact info" (1/9/24), "Setting up & sending calendar invitations for depositions" (1/9/24), "Troubleshooting issues with getting rfp production into sharepoint & disco" (4/2/24), "Access and upload files and document production from Sac City Atty's office re Meredith deposition" (11/12/24), "Travel to/from Fedex, print and hole punch all MSJ briefing; organize in binder in anticipation of oral argument; review, add sticky flags, and annotate in anticipation of oral argument" (12/16/24), "Sending various scheduling emails and texts for settlement conference and client meeting" (1/7/25), "Attempt at finding social media of witnesses" (1/28/25), "Second attempted outreach to potential witnesses over social media" (2/12/25), and an entry that included "collate PDF" (4/7/25).

### f.    Entries Counsel Represented Were Removed from Billing

Attorney Hatton attested that entries were eliminated from Plaintiffs' fee request related to fees recovered for discovery litigation (see ECF 83, Hatton Decl. ¶ 20), and despite this representation, the Court found a number of entries still

contained in their billing records, including: "Combine fees from various cocounsel firms on MTE & pull LCCRSF fees" (10/23/24), "Revise final attorneys fees chart with correct rates" (10/28/24), "Draft M&C email to OC re fees" (10/28/24), "Email to OC re attys fees" (11/18/24), "F/u email to OC re M&C re fees" (11/19/24), "Email to OC re fees and M&C schedule" (12/5/24), "M&C call with Dfts re: attys fees for mot to exclude and schedule re exchange of pre trial statements" (12/11/24), "Legal research re: comparable fees rate ISO fees request and email to co-counsel re same" (12/16/24), and "Draft revised M&C correspondence re fees for mot to exclude" (12/17/24).

Similarly, Hatton attested she eliminated hours related to Plaintiffs' unsuccessful ADA claim, however, the Court found at least one entry that includes billing for "edit section re ADA claim". See Hatton Decl. ¶ 20; ECF No. 186-8 at pg. 107.

### 4. Reductions to Siegel, Yee, Brunner & Mehta's Fees

In the final attorneys' fees award, the Court has also eliminated vague and excessive entries, entries related to the discovery litigation despite representations those were removed, as well as entries reflecting clerical tasks from Siegel, Yee, Brunner & Mehta's billing. Some examples include: "Discovery meeting" (11/16/22), "Meet and Confer follow up" (3/31/23), "Draft follow up email" (9/29/23), a 2 hour "Strategy meeting" (1/22/24), "Review docket, mtg" (5/18/22), "Emails" (8/2/23) and "Write emails" (1/8/25), "Team & Clients" (4/25/24), "Depo" (11/20/24), "Review order, Calendar" (8/11/22), "Depo Calendar" (2/7/23), and "Calendar Pretrial Submission"  (1/27/25).

///

### 5.    Initial Reduction Totals

Following the Court's reductions discussed above, the Court calculates the attorneys' fees, as follows:

CREEC

| | | | |
|---|---|---|---|
| Morales | $250/hour | 222.36 hours | $55,590 |
| Ballart | $325/hour | 98.19 hours | $31,911.75 |
| Rice | $650/hour | 274.06 hours | $178,139 |
| Brown | $325/hour | 424.01 hours | $137,803.25 |

Total: $403,444

LCCRSF

| | | | |
|---|---|---|---|
| Kashyap | $450/hour | 136.9 hours | $61,605 |
| Hatton | $325/hour | 342.6 hours | $111,345 |
| Shroff | $250/hour | 69.4 hours | $17,350 |
| Carbajal | $200/hour | 67.7 hours | $13,540 |
| Ntim | $200/hour | 319 hours | $63,800 |

Total: $267,640

Siegel, Yee, Brunner & Mehta

| | | | |
|---|---|---|---|
| Siegel | $650/hour | 161.8 hours | $105,170 |
| Johns | $450/hour | 198 hours | $89,100 |
| Beladi | $125/hour ('22)<br>$200/hour ('23) | 7.5 hours<br>54.2 hours | $937.50<br>$10,840<br>= $11,777.50 |

Total: $206,047.50

Total All Three Firms: $877,131.50

### 6.    Additional Reduction for Duplication of Work

The Court finds an additional reduction of Plaintiffs' requested fees is warranted, given the significant duplication of work across the different firms and organizations with concurrent billing from sometimes as many as 8 or 9 attorneys. As the Court previously noted, there is no justification provided by Plaintiffs for numerous senior partners and associates working on the same research, drafting and discovery tasks, concurrently attending and prepping for depositions, and

40

attending and preparing for hearings, among other things.  The Court's detailed and extensive review of all of Plaintiffs' billing records uncovered the following glaring examples of excessive, duplicative, and unnecessary billing:

- Johns and Brown both prepped for and attended the depositions of Gresham & Kaneyuki in March 2023.
- Johns, Siegel, Brown, and Rice all billed for a 2-plus hour meeting on July 11, 2023 "case strategy" or "case planning call."
- Johns, Siegel, Brown and Rice all billed for attendance at the Cybulski deposition on July 18, 2023.  There were similar entries regarding the Cunningham and Lt. Sood depositions.
- Johns, Rice, and Ntim all attended the Blessing depo in September 2023, with Rice also billed for "prep."
- Brown billed for conducting the Lt. Young deposition, also in September.  Ntim billed for attending and "tak[ing] notes for LCCR," as well as for deposition preparation that included reviewing Brown's outline.  Rice also billed for providing feedback and deposition preparation for Lt. Young's deposition.  Brown billed 3.3 hours for the deposition, while Ntim billed 3.5.
- Johns, Rice, and Brown all attended Deputy Chan's deposition in November, and Rice billed for providing "feedback" to Brown.
- In preparation for Plaintiff Kidd's deposition in February 2024, there are billing entries for calls with Johns, and the deposition is attended by Siegel, Rice, and Ntim, with Brown billing for defending it.  Ntim's also billed for "observing

41

and taking notes on Loren Kidd's deposition."

- In February 2024, Siegel, Rice, Johns, Ntim, and Brown all bill for attending Plaintiff Aguilar's deposition, including some travel costs, and an entry for "observing and taking notes."

- Siegel, Johns, and Ntim all billed for Plaintiff Jones' deposition, including travel costs for the Siegel firm attorneys.

- Rice, Siegel, and Ntim all billed for attending Plaintiff White's deposition, with Ntim and Kashyap also billed for preparation for the deposition.

- For Seargent Griggs' deposition, Rice billed for preparation, while Johns, Siegel, and Ntim attended, with Ntim again billing for "observing & taking notes . . . ."

- The billing records for Plaintiff Nash's deposition include entries for preparation, attendance, and travel by Brown and Rice, with Ntim also billing for "sitting in and taking notes . . . ."

- Brown billed for preparing and conducting Deputy Halstead's deposition, with Ntim again billing for "observing and taking notes . . . ."

- Kashyap, Ntim, and Brown all billed for preparation for Leach's deposition, while Brown billed for attendance.

- Brown, Johns, and Ntim billed for attending the Mello deposition in April 2024, with Ntim also billing for document review related to his deposition.

- Around April 24, 2024, Rice billed for deposition preparation for Sgt. Fox, as well as review of documents regarding "UAS."

42

Ntim has nearly identical entries for "Correspondence re UAS and Sgt fox deposition with Sac" the same month; Ntim also billed for "observing and taking notes on Sgt Fox deposition."

- Hatton and Brown both billed for attendance at the Meredith Deposition in November 2024, with Hatton also billed for preparation.  Similarly, Brown and Siegel both billed for attending the Maguire deposition, with Brown also billing for preparation.

The Court also found extensive duplication and excessive billing related to motion practice, hearing preparation and attendance, and other trial preparation.  For example, Siegel, Johns, Rice, Brown, Kashyap and Ntim all have billing entries for drafting and/or editing Plaintiffs' Settlement Conference Statement around the beginning of March 2024.  These same lawyers all billed for attending the settlement conferences on March 18, April 29, and June 4.  6 or more lawyers billed for preparation, travel, or attendance for the motion for summary judgment hearing, including the two senior partners.

Additionally, the billing records contain significant duplication regarding drafting and reviewing documents and discovery, like Rule 26f disclosures, complaints, Court orders, Defendants' answer to the Second Amended Complaint, "DOJ Recommendations Review," and discovery production review, sometimes being concurrently billed by more than 6 lawyers. As the Court previously noted, Plaintiffs made no attempt in their motion, nor in their declarations, to explain the necessity of staffing the case this way.  The Court therefore finds that "a lawyer in private practice [would be] ethically [] obligated to

43

exclude such hours from his fee submission."  See Hensley, 461 U.S. at 434.

Given the above-described duplicative billing entries, the Court finds an additional 25% reduction ($219,283) to Plaintiffs' fees is warranted, and is a conservative reduction, aimed to "avoid double counting."  Moreno, 534 F.3d 1106.  This reduction results in the fee total for all attorneys being reduced to $657,848.

### 7.   Calculation of Staff Fees

Plaintiffs similarly staffed this case with 4 to 5 staff and paralegals, often with 4 working and billing concurrently for similar tasks.  The billing records submitted from the paralegals and staff are also filled with entries the Court has deemed, above, to be unnecessary, duplicative, and clerical, among other things.  Instead of reducing the requested staff billing of $70,002.25 by interlineation, the Court finds a blanket reduction of 75% is justified based on the excessive billing for meetings, work on discovery databases and trainings, clerical tasks, and there being no justification for staffing this matter with more than 1 paralegal at a time.  Below are examples of the types of entries that merit this significant reduction:

"Read DISCO email; reply to inquiry re: DISCO training" (9/13/22), multiple entries totaling over 8 hours for "DISCO UNIVERSITY" or "DISCO ZOOM" (9/12-9/15/22), "Looking into DISCO, navigating the system", "Prep for DISCO training … attend training; debrief", "Check-in with Ana, File tracking" and "Multitasking re: DISCO (discuss next steps, email co-"

44

(9/16/22), "Call with Pilar to brainstorm and discuss the layout of the Sacramento Evidence Database that we are using Airtable to create" (5/5/21), "Prepared for Airtable demonstration with LCCRSF volunteers who will be assisting with evidence database (0.5); gave demonstration and answered volunteer questions (1.4)" (7/13/21), "Presentation on Airtable and Sacramento Evidence Database with LCCRSF volunteers" (7/14/21), back-to-back entries for "Call with AD and PGM to discuss Airtable usage and next," "Call with PGM to interview potential plaintiff Jeronimo," and "Call with PGM to discuss the Jeronimo Aguilar's interview and next steps" (9/10/21), more than 2 hours for "Sent email to co-counsel to schedule an Airtable training", hours billed for "texting" Plaintiffs to schedule or confirm meetings and calls in 2021, "Discussed press release and quotes from named plaintiffs with PGM" (12/21/21), 2.9 hours for "Reading press toolkit and using to draft and post social media to publicize filing of complaint and press conference (1.8) ; Drafting alternative text for images included with social media posts (1.1)" (1/4/22), 4.1 hours for "Revised and formatted e-blast before using Salsa to send" (1/7/22), 1.6 hours for "Communicated with Neda Shahram about the process of filing a Notice of Entry of Appearance; Circulated an email"  (1/12/22), "Communicated with Neda Shahram about the process of filing and circulated draft Notices of Entry of Appearance" (1/13/22), 2.1 hours for "Submitted PGM and EB's PHV applications through PACER's online platform" (1/24/22), after billing 1.1 hours for "Communicated with EB about PHV application; Completed form application found by EB".

Billing from LCCRSF also included back-to-back entries on the same day that may be erroneous, and at a minimum, are not explained or justified by Plaintiffs in their motion or declarations, as discussed above.  Below are other examples related to staff billing:

| 2/25/22 | Neda Shahram | Pleadings | Draft MTD response section I&II | 2.0 | $ 188.81 | $ | 377.62 |
|---|---|---|---|---|---|---|---|
| 2/25/22 | Neda Shahram | Pleadings | Draft MTD response section I&II | 1.9 | $ 188.81 | $ | 358.74 |
| 2/25/22 | Neda Shahram | Pleadings | Draft MTD response section I&II | 1.3 | $ 188.81 | $ | 245.45 |
| 2/25/22 | Neda Shahram | Pleadings | Draft MTD response section I&II | 0.5 | $ 188.81 | $ | 94.41 |

| 4/4/22 | Neda Shahram | Co-Counsel Meetings and Communications | Sac litigation team call | 1.0 | $ 188.81 | $ | 188.81 |
|---|---|---|---|---|---|---|---|
| 4/4/22 | Neda Shahram | Co-Counsel Meetings and Communications | Sac litigation team call | 1.0 | $ 188.81 | $ | 188.81 |

Accordingly, the Court awards $17,500 in staff and paralegal fees, resulting from a 75% reduction in the total number of hours requested after they were multiplied by the reasonable rates previously found by the Court.

D.    Rate of Success

The Supreme Court has emphasized consideration of the results obtained is "the most critical factor" for the Court to weigh in determining what fee award is appropriate.  Hensley, 461 U.S. at 434-436.  The Court must ask, "[D]id the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"  Id. at 434.  When, like here, "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an

46

excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Id. at 436.  Indeed:

> Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions. This type of litigation is lengthy and demands many hours of lawyers' services. Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.

Id. at 436.

The Court agrees with Plaintiffs, that "in a lawsuit where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." McCown v. City of Fontana, 565 F.3d 1097, 1103 (9th Cir. 2009). Accordingly, the Court declines Defendants' request to separate out Plaintiffs' claims and instead "focus[es] on the significance of the overall relief obtained by the [Plaintiffs] in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435; see also Mot. at 4-6, Opp'n at 9-12.

A significant number of Plaintiffs' claims were dismissed with prejudice between the motion to dismiss and motion for summary judgment stages.  Additionally, Plaintiffs sought 3 types of relief in this case: injunctive, declaratory, and damages.  Trial resulted in a defense verdict as to all of Plaintiffs' claims for injunctive relief, and there was no evidence put forward by Plaintiffs to support declaratory

47

relief.  Contrary to Plaintiffs' claims of "exceptional results," (e.g., Mot. at 6), the Court finds Plaintiffs achieved "partial or limited success," especially in light of the hours "expended on litigation."  Hensley, 461 U.S. at 436 ("Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit.").  Plaintiffs essentially succeeded on less than 25% of their claims, between the claims initially dismissed, and their failure to prove they were entitled to two-thirds of the relief they sought, especially since it was the thrust of their lawsuit.  The Court acknowledges a direct proportionality reduction is not appropriate or mandated, which would be closer to 80 or 85%.  Instead, the Court finds an additional 65% reduction in fees ($427,601) and costs ($35,641), resulting in a total of $230,247 in total fees and $19,192 in costs, after rounding up to the nearest dollar, is warranted, given the Plaintiffs' partial and limited success here.

    This result is supported by the findings in McCown, with this Court giving "primary consideration to the amount of damages awarded as compared to the amount sought." 565 F.3d at 1104 (quoting Farrar v. Hobby, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)) (further internal quotation marks omitted)) ("Although the Supreme Court has disavowed a test of strict proportionality, it also suggested that a comparison of damages awarded to damages sought is required.").  An award of $205,674 is nearly twice more than Plaintiffs' legal team would recover on a contingency basis for their clients' collective $350,000 recovery.  Awarding the Plaintiffs more would result in

"a windfall to counsel."  Moreno, 534 F.3d at 1111 (citations omitted).

IV.  ORDER

For the reasons set forth above, the Court GRANTS, in part, Plaintiffs' Motion for Attorneys' Fees and Costs, as follows:

LCCRSF:    $70,255 in fees and $2,048.50 in costs

CREEC/DLU:  $105,904 in fees and $3,748.50 in costs

Siegel, Yee, Brunner & Mehta:  $54,088 in fees and $13,395 in costs.

The Court further denies Plaintiffs' requests for fees and costs totaling more than $90,000 for their work on this fee motion and reply, given the Court's findings regarding the exceptionally excessive, duplicative and unnecessary billing time entries.

IT IS SO ORDERED.

Dated:  January 12, 2026

JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE